UNITED STATES of America,
Plaintiff–Appellant,

v.

Pamela Jean GANTT, Defendant–
Appellee.

No. 98–50171.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1999.

Submission withdrawn Jan. 12, 1999.

Resubmitted May 25, 1999.

Filed June 7, 1999.

Joseph Brannigan, Assistant United States Attorney, San Diego, California, for the plaintiff-appellant.

Benjamin Coleman, Federal Public Defender, San Diego, California, for the defendant-appellee.

Before: LAY,[1] GOODWIN, and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge:

In this interlocutory appeal from a suppression order, the government argues that F.R.Cr.P. 41(d) does not require agents to serve a copy of a search warrant on a person present at the search of her property. Instead, the government contends that Rule 41(d) is satisfied if a copy of the warrant is left behind at the scene after the search is completed, even if the person is first arrested and thus has no opportunity to examine the warrant left behind. We reject the government's interpretation of Rule 41(d) and affirm the district court's suppression order. Before we reach the merits of the appeal, however, we must consider whether this appeal is properly taken under 18 U.S.C. § 3731.

## I. Procedural and Factual Background

The parties appear to agree on all of the facts essential to this appeal. The government has indicted Gantt under 18 U.S.C. §§ 115, 876, and 1114 for threatening to assault and kill an FBI agent. The threats were made in numerous phone calls and letters. The government suspects Gantt because she plead guilty in 1993 to making similar threats to a Federal Public Defender in Washington state who had represented a man accused of raping Gantt. The FBI Agent began receiving the threats while she was investigating the Public Defender's complaint that Gantt had recently resumed the threatening phone calls.

At 6:30 am, on November 25, 1997, the FBI executed a search warrant on Gantt's room in a San Diego hotel. The warrant did not specify the suspected criminal activity.[2] Instead of describing the items to be seized, the warrant stated "[s]ee Attachment A." Attachment A was a two-page, typed list of items to be seized including specific kinds of envelopes, paper, and postage stamps, items with the name or address of the FBI agent or Public Defender, typing materials, and items reflecting control of the apartment searched such as mail or keys.

Upon entering Gantt's residence, the agents did not present her with a copy of the warrant. Instead, they directed her to sit in the hallway while they conducted their three-hour search. The agents did not show Gantt the warrant under the authority of which they had invaded her privacy until Gantt herself asked to see the search warrant. The agents responded by showing her the face of the warrant but not Attachment A. Gantt did not specifically ask to see Attachment A. After concluding their search, the agents gave Gantt an inventory of items seized and left a copy of the warrant with Attachment A behind in the hotel room. Before Gantt could examine the copy of the warrant left in the hotel room, however, the agents arrested her and took her to an FBI office. Only at the FBI office was Gantt shown the entire warrant including Attachment A. Among

---

1. Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

2. Because we affirm the district court's suppression order on the basis of Rule 41(d) we do not consider the failure to specify the suspected criminal activity. We do repeat our frequent criticism of this practice. See United States v. McGrew, 122 F.3d 847, 849 n. 2 (9th Cir.1997) (citing United States v. Kow, 58 F.3d 423, 427 (9th Cir.1995) (collecting cases)).

the items seized that do not appear on the list in Attachment A were a fake grenade, Spanish language materials, business cards, pawn shop receipts, a check register, a vehicle registration, and ammunition.

The district court granted Gantt's motion to suppress the evidence seized from the hotel room. The government appeals.

## II. The Government's Failure to Timely Satisfy 18 U.S.C. § 3731

■ We must first consider whether the government's appeal should be dismissed for failure timely to meet the certification requirements of 18 U.S.C. § 3731.

Beginning in 1907, Congress has granted the government limited rights of appeal in criminal cases. *See* Criminal Appeals Act of 1907, 34 Stat. 1246 (March 2, 1907) (codified as amended at 18 U.S.C. § 3731). But not until 1968 did Congress provide the government the ability to bring interlocutory appeals of district court decisions to suppress evidence. *See* Omnibus Crime Control and Safe Streets Act of 1968, Title VIII, Pub.L. 90–351, 82 Stat. 197 (1968) (codified as amended at 18 U.S.C. § 3731). Prior to the enactment of this provision, government appeals of suppression orders had been prohibited in keeping with both the policy against piecemeal litigation and the traditional reluctance to allow government appeals in criminal cases. *See Di-Bella v. United States,* 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The Supreme Court had held that "[o]rders granting or denying suppression ... are truly interlocutory" and not final orders for purposes of 28 U.S.C. § 1291.[3] *Id.*

In abrogating the common law position reaffirmed in *DiBella,* Congress did not go so far as to grant the government unfettered authority to appeal suppression orders. Appeals are not permitted "after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information." 18 U.S.C. § 3731. Before an appeal is filed, Congress also requires that "the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." This requirement is designed to force federal prosecutors to consider whether the appeal is taken for a proper purpose before they force a defendant to relitigate the evidentiary issue. *See United States v. Carrillo–Bernal,* 58 F.3d 1490, 1493 (10th Cir.1995).

■ Unfortunately, some government attorneys from time to time treat the § 3731 certification requirement as a mere formality and even neglect to file the certification in a timely manner.[4] The failure to file the certificate does not oust our jurisdiction but does require us to decide whether to exercise our discretion under F.R.App.P. 3(a) to dismiss the appeal. *See United States v. Becker,* 929 F.2d 442, 445 (9th Cir.1991). While "the complete failure to file a certificate would clearly constitute a violation of the statute," *id.* at n. 1, we have previously accepted certificates filed even after oral argument. *See id.; United States v. Eccles,* 850 F.2d 1357, 1359–60 (9th Cir.1988). Other circuits have not been as generous, especially in recent years. *See, e.g., United States v. Salisbury,* 158 F.3d 1204, 1206–07 (11th Cir.1998) (dismissing appeal where certifi-

---

3. For a detailed history of § 3731, see *United States v. Sisson,* 399 U.S. 267, 293–98, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970); *United States v. Carrillo–Bernal,* 58 F.3d 1490, 1494–97 (10th Cir.1995).

4. *See, e.g., United States v. Becker,* 929 F.2d 442, 444–445 (9th Cir.1991) (USA, Oregon); *United States v. Eccles,* 850 F.2d 1357, 1359–60 (9th Cir.1988) (U.S. Department of Jus-

tice); *United States v. Bailey,* 136 F.3d 1160, 1163–64 (7th Cir.1998) (USA, Central District of Illinois); *United States v. Salisbury,* 158 F.3d 1204, 1206–07 (11th Cir.1998) (USA, Northern District of Alabama); *United States v. Carrillo–Bernal,* 58 F.3d 1490 (10th Cir. 1995) (USA, District of New Mexico); *United States v. Miller,* 952 F.2d 866, 876 (5th Cir. 1992) (USA, Middle District of Louisiana).

786

cate filed one month after notice of appeal); *Carrillo–Bernal,* 58 F.3d at 1492 (dismissing appeal where certificate filed after court alerted parties of deficiency); *United States v. Miller,* 952 F.2d 866, 876 (5th Cir.1992) (dismissing appeal where certificate filed after deficiency raised in defendant's brief).

In the present case, the government did certify that it was not pursuing this appeal for purposes of delay but failed to certify that the evidence suppressed is a "substantial proof" of a material fact. The deficiency was raised sua sponte by this court in a pre-argument order to show cause. Before oral argument, the government filed the appropriate certification. We choose to exercise our discretion not to dismiss this appeal.

The United States Attorney's Office for the Southern District of California has shown that despite its mistake, it does take the certification requirements of § 3731 seriously. *Cf. Carrillo–Bernal,* 58 F.3d at 1494 (condemning government's treating the certification requirement as a "meaningless formality"). The Office has described its internal procedures requiring senior officials carefully to review, in light of the requirements of § 3731, each request by a trial attorney for an appeal of a suppression order. The Office has also assured this Court that those procedures were followed in the present case, that the failure to provide the certification was a clerical error, and that those procedures are being reinforced as a result of this error. Given the serious attention the United States Attorney appears to be devoting to the issue, we do not dismiss the appeal. Moreover, though the government's oversight has led to a considerable waste of judicial resources, the defendant has suffered no prejudice.

■ The Ninth Circuit does require "more than the prosecutor's bare certification" to the district court to establish § 3731 compliance; the government must also demonstrate to this Court the existence of the two § 3731 conditions. *Unit-*

*ed States v. Adrian,* 978 F.2d 486, 490–91 (9th Cir.1992); *see also United States v. Poulsen,* 41 F.3d 1330, 1333 (9th Cir.1994). The government concedes that it erred in not making a case for the § 3731 conditions in its opening brief. But because there has been no allegation or indication that the appeal is being pursued for delay and because the relevance to the indictment of the items seized is unquestioned, we conclude that § 3731 has been satisfied.

### III.  Appointment of United States Attorneys By District Courts under 28 U.S.C. § 546(d)

■ In her reply to the government's response to our order to show cause, Gantt argues that the government's § 3731 certification is invalid because the appointment of the current United States Attorney for the Southern District of California by the judges of the Southern District of California pursuant to 28 U.S.C. § 546(d) violates the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2.

Since the Civil War, the judiciary has been empowered to fill vacancies in the office of United States Attorney. *See* Act of March 3, 1863, chap. 93, § 2, 12 Stat. 768 (1863) (Rev.Stat.1873, § 793). The current version of this appointment power is codified at 28 U.S.C. § 546(d). Section 546(a)-(c) authorizes the Attorney General "to appoint a United States attorney for the district in which the office of United States attorney is vacant" for 120 days. Upon the expiration of the Attorney General's appointment, § 546(d) provides that "the district court for such district may appoint a United States attorney to serve until the vacancy is filled," i.e., until a United States Attorney nominated by the President is confirmed by the Senate under 28 U.S.C. § 541.

■ We are forced to reach the merits of Gantt's constitutional challenge. An infirmity in the United States Attorney's appointment would not generally affect the jurisdiction of this court so long as a prop-

er representative of the government participated in the action. *See United States v. Plesinski,* 912 F.2d 1033 (9th Cir.1993) (participation of improperly appointed government attorney does not affect court's jurisdiction over prosecution). The alleged infirmity would, however, nullify the § 3731 certification because, unlike many other rules, § 3731 specifically requires certification by "the United States Attorney." The constitutionality of § 546(d) would not affect the validity of indictments, by contrast, as indictments need only be signed by an "attorney for the government." *See* F.R.Cr.P. 7(c)(1); *United States v. Kouri–Perez,* 47 F.Supp.2d 164 (D.P.R.1999) (refusing to consider constitutionality of § 546(d) in motion to dismiss indictment given language of F.R.Cr.P. 7(c)(1)). While it may be possible for a United States Attorney to delegate § 3731 certification authority to a subordinate, see *United States v. Wolk,* 466 F.2d 1143, 1146 n. 2 (8th Cir.1972), if the United States Attorney's appointment is invalid, then her delegation is similarly invalid.

Following the modern trend we choose not to ratify the actions of an improperly appointed officer of the United States under the ancient "de facto officer" doctrine. *See Silver v. United States Postal Service,* 951 F.2d 1033, 1036 n. 2 (9th Cir.1991) (declining to apply de facto officer doctrine and questioning continued vitality of the doctrine); *see also United States v. Navarro,* 160 F.3d 1254 (9th Cir.1998) (reaching merits of defendant's argument that prosecuting Special Assistant United States Attorney was improperly appointed). If the United States Attorney has not been validly appointed, the government has taken this appeal in violation of § 3731, and we should decline to hear the appeal.

We are not convinced that Congress' decision to vest appointment of interim United States Attorneys in the district courts violates the Appointments Clause. The Clause requires principal officers to be appointed by the President with the "Advise and Consent" of the Senate. Congress may, however, "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II, § 2, cl. 2. Because United States Attorneys are "inferior" officers, § 546(d) passes constitutional muster.

United States Attorneys are clearly "officers" of the United States. *See Buckley v. Valeo,* 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (an officer is "any appointee exercising significant authority pursuant to the laws of the United States"); 28 U.S.C. § 547 (delineating broad authority of United States Attorney to enforce federal law). Whether they are principal or inferior officers is less obvious.[5]

■ The Constitution does not use the term "inferior" "in the sense of petty or unimportant" but in the sense of a subordinate to a principal officer. *Collins v. United States,* 14 Ct.Cl. 568, 574 (1878). The Supreme Court has recently reiterated that being an " 'inferior officer' connotes a relationship with some higher

---

5. We do not distinguish between United States Attorneys appointed pursuant to 28 U.S.C. § 541 and those appointed under § 546(d). Section 546(d) appointments are fully-empowered United States Attorneys, albeit with a specially limited term, not subordinates assuming the role of "Acting" United States Attorney. *Cf. United States v. Eaton,* 169 U.S. 331, 343–44, 18 S.Ct. 374, 42 L.Ed. 767 (1898) (vice-counsel to Siam temporarily exercising powers of counsel when latter taken ill remained an inferior officer). The power to appoint "Acting" United States Attorneys appears to lie with the Attorney General under 28 U.S.C. §§ 509 (vesting Attorney General with functions of United States Attorneys), 510 (authorizing delegation of any authority to an officer of the Department of Justice), 542(a) (authorizing appointments of assistant United States Attorneys). *See also In re Grand Jury Proceedings,* 673 F.Supp. 1138 (D.Mass.1987) (comparing appointment under § 546(d) with Attorney General's appointment of "Acting" United States Attorney).

ranking officer or officers below the President: whether one is an 'inferior' officer depends on whether he has a superior .... 'inferior officers' are officers whose work is directed and supervised at some level by others who" are principal officers.[6] *Edmond v. United States*, 520 U.S. 651, 662–63, 117 S.Ct. 1573, 1580–81, 137 L.Ed.2d 917 (1997). In *Edmond,* the Supreme Court unanimously held that judges of the Coast Guard Court of Criminal Appeals are inferior officers because they are subject to administrative supervision by the Coast Guard Judge Advocate General (JAG) and judicial supervision by the Court of Appeals for the Armed Forces. *See id.*, 520 U.S. at 667, 117 S.Ct. at 1581–82.

In light of *Edmond,* we conclude that United States Attorneys are inferior officers. United States Attorneys are subject to closer supervision by a superior than the judges of the Coast Guard Court of Criminal Appeals. Congress has granted the Attorney General plenary authority over United States Attorneys. *See, e.g.,* 28 U.S.C. § 519 (". . . the Attorney General . . . shall direct all United States attorneys . . . in the discharge of their respective duties."). The Attorney General has unfettered discretion to reassign cases from United States Attorneys to herself or to "any officer of the Department of Justice." 28 U.S.C. § 518(b). The Attorney General sets the salaries of United States Attorneys and approves the reimbursement of their office expenses. *See* 28 U.S.C. §§ 548, 549. An example of the supervision exercised by the Attorney General is her decision to require United States Attorneys to conduct state and federal appellate litigation only under the guidance of the Solicitor General. *See* 28 C.F.R. § 0.20(b). The one significant statutory limit on the Attorney General's supervision of United States Attorneys is Congress' decision to vest appointment and removal power in the President. *See* 28 U.S.C. § 541.

The few other authorities that have considered the matter have also concluded that United States Attorneys are inferior officers. *See United States v. Solomon,* 216 F.Supp. 835, 838–43 (S.D.N.Y.1963) (in dicta, approving constitutionality of predecessor of § 546(d) by presuming United States Attorneys are inferior officers), *cited with approval by Morrison v. Olson,* 487 U.S. 654, 676–77, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); 2 Op. Off. Legal Counsel 58 (Feb. 28, 1978) (because United States Attorneys are inferior officers, vesting appointment and removal power in Attorney General would be constitutional).

Gantt argues that even if United States Attorneys are "inferior" officers, § 546(d) must be struck down because there is an "incongruity" in the appointment of a United States Attorney by the judges before whom she will appear. *Cf. Morrison,* 487 U.S. at 675–77, 108 S.Ct. 2597. This argument is without merit. *Morrison* itself cites § 546(d) and *Solomon* in support of the proposition that judicial appointment of prosecutors does not necessarily create an incongruity. *Id.*

Moreover, in passing on § 546(d) we consider the purpose of the Appointments Clause as enunciated by a unanimous Supreme Court in *Edmond*—to "prevent congressional encroachment upon the executive and judicial branches." *Edmond,* 520 U.S. at 659, 117 S.Ct. at 1579. The provisions of § 546(d) do not conflict with this purpose. The judicial branch is not required to appoint a United States Attor-

---

**6.** Given the Court's decision in *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), we recognize that supervision by a superior officer is a sufficient but perhaps not a necessary condition to the status of inferior officer. In *Morrison,* the Court held that the independent counsel was an inferior officer despite that, due to the nature of her office, the independent counsel is subject to only limited supervision by executive and judicial branch officers. The Court relied instead upon her limited jurisdiction and tenure and the power of removal granted to the Attorney General. *See id.* at 671–72, 108 S.Ct. 2597.

ney; it is simply empowered to do so. More importantly, the President retains the power to replace the court-appointed United States Attorney with an Attorney appointed by the President and confirmed by the Senate.

We now turn to the merits of the appeal.

## IV. Standard of Review

■ The district court's decision to suppress is reviewed as a question of law, but the trial court's factual findings are, of course, reviewed for clear error. *See United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1087, 140 L.Ed.2d 144 (1998).

## V. The Requirements of Rule 41(d)

■ The government violated F.R.Cr.P. 41(d) by failing to present Gantt with a complete copy of the warrant. Rule 41(d) provides in pertinent part: "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken...." The government argues that, under the rule, agents always have the option of serving the warrant on the person or leaving the warrant behind after they have completed the search.

■ We reject this reading of Rule 41(d). As we have frequently explained, one of the major aims of the particularized warrant requirement is to "give notice to the person subject to the search what the officers are entitled to seize." *In the Matter of Seizure of Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1318 (9th Cir.1981) (quoting *United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir.1970)). *Accord United States v. McGrew,* 122 F.3d 847, 850 (9th Cir.1997);

*United States v. Van Damme,* 48 F.3d at 466 (9th Cir.1995) (since affidavit did not accompany warrant "Van Damme could look at no document specifying what the officers could take."); *United States v. Towne,* 997 F.2d 537, 545 (9th Cir.1993); *United States v. Hayes,* 794 F.2d 1348, 1355 (9th Cir.1986) (one purpose of "accompany" requirement is to "inform the person subject to the search what items the officers ... can seize."), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

Under the government's reading of Rule 41(d), this essential function of the warrant is defeated. If the warrant is not disclosed until after the completion of the search then the warrant cannot "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer ... and the limits of his power to search." *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *abrogated on other grounds, California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The individual loses the opportunity to point out to the agents that certain items are beyond the scope of the warrant or even that the agents have targeted the wrong residence. Most importantly, until the search is completed, the individual cannot be certain that the officers are acting under valid judicial authority. There is simply no reason to leave the subjects of police searches, who are present during the search, ignorant of the scope of the warrant.

■ Rule 41(d) must be interpreted in light of the clear policy underlying the warrant requirement to provide notice and reassurance to individuals whose property is searched. If a person is present at the search then "the officer ... shall give to the person ... a copy of the warrant" before the warrant is executed, absent some exigent circumstance.[7] Officers

---

7. Exigent circumstances might include searches based on the ignorance of the subject of the search. *See, e.g., Katz v. United*

*States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (electronic surveillance does not require notice to subject of search); *United*

should utilize the disfavored alternative of leaving behind a copy of the warrant only when necessary.

The government advances only one justification for failing to serve the warrant on the subject of the search as the warrant is executed. The government claims that it fears violent confrontations with the agents if the subject believes the agents are overstepping the bounds of their authority. The government would rather such disputes be resolved in suppression hearings. We are not persuaded by this reasoning. Persons prone to physical confrontation with armed federal agents are not necessarily less likely to resort to violence if the warrant is kept from them. Moreover, the invasion of an individual's rights cannot be wholly remedied by a suppression order. The opportunity to calmly argue that agents are overstepping their authority and the knowledge that agents are in fact acting under judicial authority should not be arbitrarily denied to the subjects of government searches.

The government's interpretation of the statute also conflicts with basic norms of statutory construction. If leaving the warrant behind after the search always suffices, there is no need for Rule 41(d) to include the more demanding requirement of service on the person whose premises are searched. The first half of the rule is rendered mere surplusage. Basic canons of statutory interpretation require that the more demanding requirement be the preferred requirement. Even the lone case the government cites in support of its in-terpretation, *Nordelli v. United States,* 24 F.2d 665 (9th Cir.1928), conflicts with its understanding of the rule. In *Nordelli,* this Court held that the rule "requires that the officer shall give a copy of the warrant and a receipt for the property to the person from whom taken, or *in his absence* leave it in the place." *Id.* at 666 (emphasis added).

Nor did showing Gantt the face of the warrant without Attachment A satisfy Rule 41(d). Without Attachment A, the warrant clearly violated the Fourth Amendment's particularity requirement and for purposes of Rule 41(d) was not a valid warrant. *See Van Damme,* 48 F.3d at 466; *Talk of the Town Bookstore,* 644 F.2d at 1319.

■■■■■ Not every violation of Rule 41(d) demands suppression, however. Under Ninth Circuit case law "technical" or "non-fundamental" violations of Rule 41(d) require suppression only if there was a "deliberate disregard of the rule" or if the defendant was prejudiced. *See United States v. Negrete–Gonzales,* 966 F.2d 1277, 1283 (9th Cir.1992). Because the violation here was both deliberate and prejudicial, we need not decide whether the violation was fundamental.[8] The violation was deliberate: even after Gantt asked to see the warrant, the agents declined to show her the essential part of the warrant. The government has provided no explanation or justification for the agent's failure. The violation was also prejudicial. In the context of technical Rule 41(d) violations, prej-

*States v. Johns,* 948 F.2d 599 (9th Cir.1991) ("sneak and peek" search requires ignorance of subject of search).

8. Thus, we need not decide whether the Fourth Amendment contains such a "notice" requirement. *Cf. United States v. McGrew,* 122 F.3d 847, 850 (9th Cir.1997) (under the Fourth Amendment, requiring warrants to be served on persons present at the search of their property). Gantt relies heavily on *McGrew,* and the district court also relied on *McGrew's* interpretation of the Fourth Amendment in suppressing the evidence. *McGrew* was decided on September 12, 1997, more than two months before the search on Gantt's apartment was executed. Because Rule 41(d) requires suppression, there is no need to decide whether *McGrew's* interpretation of the Fourth Amendment is controlling.

The Supreme Court recently declined to address "how detailed the notice of the seizure must be or when the notice must be given." *See City of West Covina v. Perkins,* 525 U.S. 234, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999). In a concurring opinion, Justice Thomas briefly discusses the possible scope of a Fourth Amendment notice requirement. *See id.* at 684–85 (Thomas, J. concurring).

udice means that "the search might not have occurred or would not have been so abrasive if the rule had been followed." *United States v. Johns,* 948 F.2d 599, 604 (9th Cir.1991). Had Gantt been provided a copy of the warrant, the search would have been less abrasive. She would not have been in doubt regarding the authority of the agents, and she might also have been able to point out to the agents that many of the items seized were beyond the scope of the warrant. Our Rule 41(d) jurisprudence requires suppression under these circumstances.

## VI. The "Good–Faith" Exception

The government argues that even if a Rule 41(d) violation demanding suppression has occurred, the evidence should not be suppressed under the "good-faith" exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The good-faith exception is not relevant here.

The good-faith exception is applied when a magistrate erroneously issues a warrant but the officers involved are not expected to recognize the mistake. "If the executing officers act in good faith and in reasonable reliance upon a search warrant, evidence which is seized under a facially valid warrant which is later held invalid may be admissible." *United States v. Michaelian,* 803 F.2d 1042, 1047 (9th Cir. 1986) (providing examples of good-faith exceptions). The Supreme Court's goal in establishing the good-faith exception was to limit the exclusionary rule to situations where the illegal behavior of officers might be deterred. *See Leon,* 468 U.S. at 918, 104 S.Ct. 3405. The exclusionary rule is designed to deter police misconduct rather than legal errors of judges and magistrates. *See Illinois v. Krull,* 480 U.S. 340, 349–52, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).

The corollary of the above reasoning is that the exclusionary rule should be applied where the violation is the fault of the officers. If there is no error on the part of the judiciary, the good-faith exception is inapplicable. Stated differently, the good-faith exception is not relevant where the violation lies in the *execution* of the warrant, not the validity of the warrant. Under such circumstances, suppression will presumably deter future violations and the exclusionary rule serves its purpose. In Gantt's case, the officers erred in the execution of a warrant, a subject wholly within their province. There is no allegation that the warrant was invalid or that the magistrate committed an error. The good-faith exception is not relevant.

## VII. Conclusion

The agents violated Rule 41(d)'s requirement that a warrant be served upon a person present at the search of her property at the time of execution absent some exigent circumstance. The violation was deliberate and prejudicial, so suppression is required under Rule 41(d) regardless of the dictates of the Fourth Amendment. Because errors in the execution of warrants are solely in the province of agents, the good-faith exception has no applicability. The decision of the district court to suppress the evidence seized at Gantt's apartment is AFFIRMED.