**UNITED STATES of America,**
**Plaintiff,**

v.

**Elvin PERALTA–RAMIREZ, Carmelo Mercado–Ortiz, Jose Edgardo Medina, Jorge Luis Ortiz–Delgado, Fermin Hilario, Defendants.**

**No. Crim. 99–0016CCC.**

United States District Court,
D. Puerto Rico.

Feb. 11, 2000.

As Amended Feb. 14, 2000.

Guillermo Gil, U.S. Attorney, Miguel A. Pereira, Assistant U.S. Attorney, Hato Rey, PR, for plaintiff.

Maria H. Sandoval, Howard Srebnick, for defendants.

**ORDER**

CEREZO, District Judge.

The Court has before it the Motion to Dismiss the Indictment filed by defendant Fermín Hilario on November 16, 1999 (**docket entry 99**), and the government's response filed on January 18, 2000 (**docket entry 114**). Mr. Hilario contends that the appointment of Mr. Guillermo Gil–Bonar as interim United States Attorney for the District of Puerto Rico made by the Judges of this Court on September 9, 1993, pursuant to 28 U.S.C. § 546(d), is unconstitutional on several grounds and argues that Gil–Bonar's participation in this case renders the Superseding Indictment pending against him null and void.

The issues raised in this case have been considered in other criminal proceedings before this Court and at the appellate level in *United States v. Colon–Munoz*, 192 F.3d 210 (1st Cir.1999). In the latter case, the Court defined the issues relevant to the constitutionality or legality of the September 9, 1993 appointment of Mr. Gil–Bonar as interim United States Attorney by this Court pursuant to 28 U.S.C. § 546(d). Of the five issues stated by the Court of Appeals in its April 9, 1999 Order, the parties in this case have addressed with particular emphasis those described under items 2 and 3 of the Order:

2. Whether 28 U.S.C. § 546 violates the Appointments Clause of the United States Constitution, art. 2, § 2, cl. 2 and the principle of separation of powers, on its face or as applied in the circumstances of this case....

264

3. Even if the statute is constitutional, does the length of the interim appointment of the United States Attorney violate Congress' intent in enacting 28 U.S.C. § 541, 546?

Although considering these to be "serious issues," the Court found that they had not been timely raised since Mr. Colón made the constitutional challenge to the judicial appointment of Mr. Guillermo Gil–Bonar as the interim United States Attorney for the District of Puerto Rico for the first time in his motion for judgment of acquittal. *Colon–Munoz,* 192 F.3d at p. 219.

At the district court level, the constitutional challenge was also raised in *United States v. Sotomayor Vazquez,* 69 F.Supp.2d 286 (D.P.R.1999), where defendant claimed that the length of Mr. Gil–Bonar's interim appointment constitutes a *de facto* permanent appointment in violation of the Appointments Clause and the doctrine of separation of powers. The decision striking down that challenge was adopted by another Judge of this Court in *United States v. Sosa,* 78 F.Supp.2d 20 (1999) (1999 WL1256301, District of Puerto Rico, December 6, 1999), without an independent discussion. We shall later address the parts of the *Sotomayor* analysis which are relevant to the resolution of the motion to dismiss the indictment based on the alleged unconstitutionality/illegality of this Court's interim appointment.

The Court finds that the length of the Interim appointment of the United States Attorney violates Congress' intent in enacting 28 U.S.C. §§ 541 and 546. It is unnecessary, therefore, to engage in the analysis of the constitutional issues raised. Any mention of the Appointments Clause is done strictly with reference to Congress' enactment of these statutes in conformity with that clause. Considering that the distinctive characteristics of the modes of appointment established by Congress in sections 541 and 546(d) have been blurred in reaching the conclusion that this interim appointment is valid, we feel constrained to commence the discussion by referring to

the text of the Appointments Clause, the language of these statutory provisions and the relevant case law.

The Appointments Clause of Article II of the Constitution reads as follows:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the appointment of such Inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., Art. II, § 2, cl. 2.

In *United States v. Germaine,* 99 U.S. 508, 509, 25 L.Ed. 482 (1878), the Court referred to the two modes of appointment stating that "[t]he Constitution for purposes of appointment very clearly divides all its officers into two classes." The Court referred to a "primary class [which] requires a nomination by the President and confirmation by the Senate." *Id,* at p. 510. It then referred to the alternative mode of appointment to deal with particular situations, such as "sudden removals" or the sheer number of positions which made the first mode "inconvenient." It concluded "there can be but little doubt" ... [t]hat all persons who can be said to hold an office under the government about to be established under the Constitution were intended to be included within one or the other of these modes of appointment." *Id.* Reaffirming this basic tenet, the Court in *Buckley v. Valeo,* 424 U.S. 1, 132, 96 S.Ct. 612, 46 L.Ed.2d 659, (1976) said: *"all* Officers of the United States are to be appointed in accordance with the Clause." (Emphasis in original). It added: "Principal officers are selected by the President with the advice and consent of the Senate. Inferior officers Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary"

but "[n]o class or type of officer is excluded because of its special functions." *Id.*

The parties have cited no case, and the Court has found none, in which the mode of appointment by the President with Senatorial confirmation has been challenged.[1] Joseph Harris, in the introduction to his book *The Advice and Consent of the Senate; A Study of the Confirmation of Appointments of the United States Senate* (1953) addresses this situation, stating:

> ... No case has ever been taken to the Supreme Court to test the authority of Congress to require Senate approval of appointments, and it is unlikely that such a case will come before the Court. When the question has arisen collaterally, the Court has avoided ruling on the subject by holding that persons appointed by the President and confirmed by the Senate are "officers of the United States," and that those appointed otherwise are "inferior" officers. Although the federal courts have frequently interpreted the term "officer" as used in various federal statutes, these decisions do not indicate a uniform usage and, in any event, do not apply to the term as used in this section of the Constitution. **The decision concerning which officers should be appointed by the President and confirmed by the Senate is essentially political in character and has appropriately been left to legislative rather than judicial determination.**

*Id.* at p. 15. (Footnote omitted, emphasis ours.)

Mr. Justice Story observed in his *Commentaries on the Constitution of the United States*, (1991) that the propriety of the discretionary power granted to Congress by the Appointments Clause "cannot well be questioned" and that the limits of its discretion "could hardly admit of being exactly defined; and it might fairly be left to congress to act according to the lights of experience." *Id.* at pp. 384–85.

Courts and commentators have made statements that point to shared appointments as aiming at more qualified persons while the direct appointment is viewed as a practical means of dealing in a more agile manner with the business of government. Harris, for example, refers to the presidential appointments with Senate approval as including those officers who "provide the leadership, exercise general direction and control, and set the tone of the government" although recognizing that in that group are included "many subordinate officers and employees who do not determine policies but work under the direction and control of administrative superiors." *Id.* at p. 2. In 1903, the Supreme Court in *Shurtleff v. United States*, 189 U.S. 311, 315, 23 S.Ct. 535, 536, 47 L.Ed. 828 (1903), referred to the particular office involved in that case as regarded by Congress "of sufficient importance to make it proper to fill it by an appointment to be made by the President and confirmed by the Senate," thereby classifying it "as appropriately coming under the direct supervision of the President ... (and confirmed by the Senate) with reference to his constitutional

---

1. All of the constitutional challenges raised have been addressed to direct appointments of Inferior officers under the Excepting Clause of the Appointments Clause. *See Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717 (1880) (the Court found that federal supervisors of elections were inferior officers for purposes of the Appointments Clause); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 352–353, 51 S.Ct. 153–156, 157, 75 L.Ed. 374 (1931) (U.S. Commissioners were found to be inferior officers); *Morrison v. Olson*, 487 U.S. 654, 670, 108 S.Ct. 2597, 2608, 101 L.Ed.2d 569 (1988) (independent counsel appointed under the Ethics in Government Act is an inferior officer); *Freytag v. Commissioner*, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (held that special trial judges charged with assisting tax court judges were inferior officers and could be appointed by the chief judge of the Tax Court); *Edmond v. United States*, 520 U.S. 651, 665, 117 S.Ct. 1573, 1582, 137 L.Ed.2d 917 (1997) (judges of the Coast Guard of Criminal Appeals appointed by the Secretary of Transportation are inferior officers within the meaning of the Appointments Clause).

responsibilities to see that the laws are faithfully executed." Mr. Chief Justice Taft in *Myers v. United States*, 272 U.S. 52, 161, 47 S.Ct. 21, 71 L.Ed. 160 (1926), observed that for forty years all postmasters were directly appointed by the Postmaster General under the Excepting Clause but Congress changed the mode of appointment to a presidential appointment with the consent of the Senate. He expressed that this was "an indication that Congress deemed appointment by the President with the consent of the Senate essential to the public welfare." In *Edmond v. United States*, 520 U.S. at 658, 117 S.Ct. at 1578, Justice Scalia refers to the mode of appointment which vests in the President the power to appoint principal officers with the consent of the Senate as a "disposition ... designed to ensure a higher quality of appointments." And, citing Alexander Hamilton in *The Federalist No. 77*, he points to the public accountability ensured by the joint participation of the President and the Senate in the making of appointments. *Id.* The shared appointment is viewed as a mode which allows for heightened scrutiny of the qualifications of the person nominated for a position while the purpose for choosing the direct appointment method responds to considerations of "administrative convenience." *See Edmond*, at p. 660, 117 S.Ct. 1573, where the Court said that "administrative convenience ... was deemed to outweigh the benefits of the more cumbersome procedure, only with respect to the appointment of inferior officers."

Commenting on the appointing power which resulted in the "union of the Senate with the President," Hamilton in *The Federalist No. 77* wrote:

> ... Those who can best estimate the value of a steady administration, will be most disposed to prize a provision which connects the official existence of public men with the approbation or disapprobation of that body which, from the greater permanency of its own composition, will in all probability be less subject to inconstancy than any other member of the government."

In *The Federalist No. 76* he defended this plan of appointment, stating that: "[i]t would be an excellent check upon a spirit of favoritism of the President, and would tend greatly to prevent the appointment of unfit characters from state prejudice, from family connection, from personal attachment, or from a view to popularity."

Referring also to the union of the Executive with the Senate in appointments, Justice Story said: "the most, that can be done, is to provide checks, and public responsibility. The plan of the Constitution seems to be as nearly perfect for this purpose, as any one can be." Story, *id.* at pp. 380–81.

The relevant statutes in issue before the Court, 28 U.S.C. §§ 541(a) and 546(d), follow the plan of appointments established by the Constitution in the Appointments Clause. The method of appointment chosen by Congress for United States attorneys in Section 541(a) falls within the first class of officers described in the Appointments Clause which requires appointment by the President with the advice and consent of the Senate. The statute also established a fixed term of appointment of four years for that office and placed the power of removal on the President.[2] In Section 546 Congress determined that when the office of a United States Attorney became vacant in a district, the interim United States attorney would be directly appointed by the Attorney General for 120 days

---

**2.** Title 28 U.S.C. § 541 reads:

(a) The president shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

(b) Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

(c) Each United States attorney is subject to removal by the President.

and, upon expiration of such term, the district court could appoint a United States attorney to serve until the vacancy was filled.[3] This mode of appointment clearly falls within the Excepting Clause of the Appointments Clause.

In *Sotomayor,* Judge Fusté concluded "that United States Attorneys, including interim United States Attorneys, are 'inferior' officers for Appointments Clause purposes." *Sotomayor, id.* at 291. We understand that this conclusion subverts the Congressional enactment set forth in Sections 541 and 546 whereby Congress chose one mode of appointment for United States attorneys and another—totally different method—for interim United States attorneys.

The *Sotomayor* court justifies the fusion of these two methods of appointment, thereby reducing the legislative determination into a single method: that of direct appointment. It does this in two ways: (1) by relying on *United States v. Gantt,* 179 F.3d 782, 787–88 (9th Cir.1999); *United States v. Solomon,* 216 F.Supp. 835, 838–43 (S.D.N.Y.1963), and *Myers v. United States,* 272 U.S. at 129, 47 S.Ct. 21,[4] and (2) by using certain "indicia" set forth in *Morrison, supra,* in deciding what differentiates "principal" from "inferior" officers. The Court's analysis under the Appointments Clause section of the opinion disregards the fundamental fact that Congress chose for **all** United States attorneys the presidential/senatorial approval method of appointment which has been generally associated with principal officers, and

that only by way of exception, in the unique circumstances of a vacancy, was the congressional choice of direct appointment to be applied. By classifying all United States attorneys as inferior officers, it has turned the exception into the rule and has annulled Congress' primary choice without any rationale basis for doing so.

We understand that *United States v. Solomon, supra,* which the *Sotomayor* Court states "approv[ed], in dicta, [the] constitutionality of predecessor statute to 28 U.S.C. § 546(d) **based on United States attorneys being 'inferior officers,'** " 69 F.Supp.2d at 289 (emphasis ours), does not stand for that proposition. The office involved in that case was that occupied by Mr. Vincent L. Broderick, who had been appointed by the Judges of the United States District Court for the Southern District of New York as the interim United States Attorney pursuant to the provisions of 28 U.S.C. § 506, the predecessor of section 546. Nowhere is the finding on the constitutionality of section 506 based on United States attorneys being inferior officers. The Court never expanded the scope of its determination to include United States attorneys. The factual basis was strictly limited to the interim position. It made clear **"that the appointive power of the judiciary contemplated by section 506 in no wise equates to the normal appointive power** ... the judiciary's power is only of a temporary nature ... the appointment itself contemplates only a temporary mode of having the duties of the office performed

---

**3.** Title 28 U.S.C. § 546 reads:

(a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States Attorney under this section may serve until the earlier of—

(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

(2) the expiration of 120 days after appointment by the Attorney General under this section.

(d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

**4.** *Myers* does not consider this subject matter at all.

until the President acts." *Solomon, id.* at p. 842. (Emphasis ours.)

In *Gantt*, the Court concluded that United States attorneys are inferior officers and at footnote five, page 787, categorically said that "[w]e do not distinguish between United States attorneys appointed pursuant to 28 U.S.C. § 541(a) and those appointed under 546(d)." Again, the end result of this is to abolish the mode of appointment chosen by Congress for all United States attorneys in section 541—by the Executive with Senate approval—and to substitute it by a single method—that of direct appointments contemplated in the Excepting Clause and enacted in section 546(d) solely for Interim appointments. Both *Sotomayor* and *Gantt* engage in a discussion of the criteria set forth in *Morrison, supra,* and in *Edmond v. United States, supra,* to justify their classification of **all** United States attorneys as inferior officers. Indicators such as supervision or subordination to a higher ranking officer, control, power of removal, duties and tenure are applied to support the classification of those officers as "inferior."

The flaw in this analysis, as stated before, is that it does not take the obvious into account: that when Congress enacted section 541 and required a presidential appointment with senatorial confirmation for **all** United States attorneys it placed them in the scheme of appointment that the Constitution employed for Consuls, Justices of the Supreme Court and all other Officers of the United States and that, when it chose the direct appointment for **interim** United States attorneys upon enacting section 546(d), in accordance with the Excepting Clause, it chose an alternative type of appointment which has distinct features from the section 541 appointment. The congressional choice of appointment of United States attorneys vis a vis the choice for interim United States attorneys precludes their consolidation by judicial fiat. There is no leeway for erasing the boundaries of these two modes of appointment once Congress has established them, as it did in sections 541 and 546. That determination lies solely in the hands of Congress, and there is no room for questioning it.

Precisely because of this, the *Morrison/Edmond* criteria are irrelevant to the situation before us. Congress' selection of a presidential type appointment with Senate approval for all United States attorneys in section 541 precludes any consideration of a crossover from the section 541 type appointment to the section 546 mode. Declaring all United States attorneys inferior officers does not thereby invalidate the congressional determination of the two different types of appointment for United States attorneys and interim United States attorneys established in the law.

*Gantt* attempts to justify the consolidation of United States attorneys appointed under section 541 with those appointed under section 546(d), stating, at footnote five, that "section 546(d) appointments are fully-empowered United States attorneys, albeit with a specially limited term, not subordinates assuming the role of 'acting' United States attorneys." *Gantt, supra,* at p. 787. This claim contradicts *United States v. Eaton,* 169 U.S. 331, 343, 18 S.Ct. 374, 379, 42 L.Ed. 767 (1898) (cited with approval in *Morrison, supra,* at p. 2689, 108 S.Ct. 2597). There, the Court approved Department of State regulations that allowed executive officials to directly appoint a "vice consul" in case a vacancy occurred in the office of the consul, notwithstanding that the Appointments Clause requires "Consuls" to be appointed by the President with the advice and consent of the Senate. The Court stated: "[b]ecause the subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official." The performance of the full panoply of duties by the interim United States attorney who is temporarily filling a vacancy does not vest in that person the character of a "United States attorney" in "the broader and more

permanent" sense of that office appointed as established by Congress in 28 U.S.C. § 541. *Id.*

Interim United States Attorney Gil–Bonar was a trial attorney with the United States Department of Justice when the Judges of this Court named him to per- form the duties of the United States attorney on a temporary basis and under the exigent circumstances of a vacancy, pursuant to section 546(d). That neither converted Mr. Gil–Bonar into **the** United States Attorney of this District (the equivalent of "the superior and permanent official" in *Eaton*) nor did away with the need for a presidential appointment with the advice and consent of the Senate, as required by section 541(a), for the person who would hold that office.

Mr. Gil–Bonar has served in an interim capacity for a period of six years and five months. He has surpassed the fixed term of four years established for United States attorneys in section 541 by almost two and a half years. During this prolonged interregnum, no political nominee has been submitted to the Senate for its consideration. The inactivity regarding the political appointment during a period which surpasses the limited tenure established by Congress for United States attorneys in section 541(a) has converted this provisional appointment into a *de facto* permanent United States Attorney, in violation of section 541(b). *See Valenti v. Rockefeller*, 292 F.Supp. 851, 855 (W.D.N.Y.1968) (where the Court, with reference to the discretion of the State concerning the timing of vacancy elections and the making of temporary appointments until then, observed that "[w]e would have difficulties ... squaring the word 'temporary' with a statute providing that the ... appointee is to serve out the remainder of a term regardless of its length).

This places our District in an anomalous situation. Mr. Gil–Bonar has never been subjected to public scrutiny before the Senate. The direct appointment method bypasses this requirement but only for

officers designated on a temporary basis. His extended tenure, even beyond the section 541 time limitation, presents a problem of accountability. The idea of placing individual responsibility for certain appointments upon the Executive and the Legislature is forcefully discussed in Justice Scalia's dissenting opinion in *Morrison, supra,* at p. 2638, where he focuses on "the vast power and the immense discretion that are placed in the hands of the prosecutor with respect to the object of his investigation." To that end, he quotes at length from a speech given by Justice Robert Jackson when he was Attorney General to United States attorneys.

'If the prosecutor is obliged to choose his case, it follows that he can choose his defendants. Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than cases that need to be prosecuted. With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone. In such a case, it is not a question of discovering the commission of a crime and then looking for the man who has committed it, it is a question of picking the man and then searching the law books, or putting Investigators to work, to pin some offense on him. It is in this realm—in which the prosecutor picks some person whom he dislikes or desires to embarrass, or selects some group of unpopular persons and then looks for an offense, that the greatest danger of abuse of prosecuting power lies. It is here that law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself.'

*Morrison, Id. quoting* R. Jackson, The Federal Prosecutor, Address Delivered at

the Second Annual Conference of United States Attorneys, April 1, 1940.

Justice Scalia propounds that "the primary check against prosecutorial abuse is a political one," *id.*, since, given the political appointment of prosecutors, the blame if there is anything wrong with the selection falls upon the President who is elected by and accountable to the people.

The concept of public accountability for appointments is discussed by Hamilton in *The Federalist No. 77.*

Upon a comparison of the plan for the appointment of the officers of the proposed government with that which is established by the constitution of this State, a decided preference must be given to the former. In that plan the power of nomination is unequivocally vested in the Executive. And as there would be a necessity for submitting each nomination to the judgment of an entire branch of the legislature, the circumstances attending an appointment, from the mode of conducting it, would naturally become matters of notoriety; and the public would be at no loss to determine what part had been performed by the different actors. The blame of a bad nomination would fall upon the President singly and absolutely. The censure of rejecting a good one would lie entirely at the door of the Senate; aggravated by the consideration of their having counteracted the good intentions of the Executive. If an ill appointment should be made, the Executive for nominating, and the Senate for approving, would participate, though in different degrees, in the opprobrium and disgrace.

The concern that the idea of responsibility not be lost was voiced by Attorney General Janet Reno herself in her remarks to the Senate Committee on Governmental Affairs regarding the Independent Counsel Act:

Our Founders set up three branches of government: a Congress that would make the laws, an Executive that would enforce them, and a judiciary that would decide when they had been broken. The Attorney General, who Is appointed by the President and confirmed by the Senate, is publicly accountable for her decisions....

In contrast, the Independent counsel is vested with the full gamut of prosecutorial powers, but with little of its accountability. He has not been confirmed by the Senate.... Accountability is no small matter. It goes to the very heart of our constitutional scheme. **Our Founders believed that the enormity of the prosecutorial power—and all the decisions about who, what, and whether to prosecutor—should be vested in one who is responsible to the people.** That way—and here I'm paraphrasing Justice Scalia's dissent in *Morrison v. Olson*—whether we're talking about over-prosecuting or under-prosecuting, 'the blame can be assigned to someone who can be punished.'

J. Reno, Prepared Remarks presented before the Senate Committee on Governmental Affairs, March 17, 1999. (Emphasis added.)

The problem as described by Attorney General Reno is precisely the one confronted by this Court. The appointment of the United States Attorney in this District in compliance with the requirements of section 541(a) which places the responsibility for it in the hands of the President and the Senate is overdue. It is time that the Executive discharges the authority and assumes the responsibility vested upon this branch of government by Congress pursuant to 28 U.S.C. § 541(a). To further prolong this interim appointment constitutes an abdication of such duty. It is both unwise and unfair to abrogate the Congressional mandate set forth in section 541(a). We—the Executive, Legislature, and Judiciary—would do well to heed the advice of Justice Frankfurter, as quoted by Attorney General Reno in her address to the Senate: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Id.*

Having determined that the interim appointment of United States Attorney Gil–Bonar is illegal since the length of such interim appointment violates Congress' intent in enacting sections 541 and 546, all delegation of the power to prosecute flowing from him to the Assistant U.S. Attorney in this case is, therefore, invalid. Congress vested in each United States attorney the duty to prosecute for all offenses against the United States. See 28 U.S.C. § 547. It also provided for appointment by the Attorney General of assistant United States attorneys or special attorneys to assist the United States attorney in the discharge of his statutory duties. The authority to prosecute ultimately resides in the United States attorney, as provided in section 547.

For the reasons stated, the Motion to Dismiss the Indictment filed by defendant Fermín Hilario (**docket entry 99**) is GRANTED, without prejudice. This order is applicable to defendant Hilario, who was the only defendant who sought dismissal on these grounds.

**This Order is STAYED during the pendency of any appeal.**

SO ORDERED.