Edward **CHEVRETTE**, Plaintiff,

v.

Ronald J. **MARKS**, et al., **Defendants.**

Civ. No. 81–0312.

United States District Court, M.D. Pennsylvania.

Feb. 25, 1983.

**1134**

Edward Chevrette, pro se.

Sally A. Lied, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

In a Report dated January 18, 1983, Magistrate Raymond J. Durkin set forth ten recommendations concerning the disposition of various motions pending in the instant case. After independently reviewing the record, the court has decided to adopt the Magistrate's Report and the recommendations therein. Having carefully examined the eighty-nine documents which comprise the record in this rather uncomplicated case, the court also feels compelled to make the following observations.

■ Initially, the court notes that the plaintiff is a prisoner proceeding pro se and in forma pauperis. The court therefore recognizes that the plaintiff's pleadings should be held "to less stringent standards" than those drafted by practicing attorneys. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This does not mean, however, that a court must permit a pro se litigant to swell its docket with a barrage of frivolous and irrelevant matters. *See, e.g.,* 28 U.S.C. § 1915(d); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir. 1976).

■ Stripped to its bare essentials, the claim advanced in the present case is that the plaintiff has been subjected to cruel and unusual punishment because one of the defendants refuses to allow him to take prescribed medication in private. Apparently the plaintiff has digestive problems and he occasionally vomits after ingesting his medicine. The court feels that this claim is patently frivolous, for there is ample justification for requiring prisoners to ingest medication in the presence of officials, even when, as plaintiff claims, the drug is not a narcotic. This justification may be even stronger in the present case, where the medication is disgorged soon after its ingestion. In any event, apparently because the plaintiff had also alleged that he had been *deprived* of his medication, the Magistrate did not recommend dismissal of the action pursuant to 28 U.S.C. § 1915(d) at the outset.

More disturbing than the possibility that the action involves plainly unmeritorious claims is the manner in which the plaintiff has prosecuted his suit. Nearly two years ago, in his first Report regarding this case, Magistrate Durkin stated:

> The file in this action is a mess, primarily due to plaintiff's continuous filing of "amendments," "motions," or other documents in which he primarily complains of other matters which have occurred at the prison since he filed his original complaint. There is no indication that these "amendments" or "motions" have been served, or in some cases, timely served, upon defendants' counsel, even though plaintiff was told that on all future documents, he must make service on opposing parties. His belated "certificates" of service appear to confuse matters even more.

Report of Magistrate at 3, Document No. 24 of the Record. This Report, which was later adopted by this court, warned the plaintiff that he would be required to file an amended complaint "limited to the issues initially raised." *Id.* at 7.

The plaintiff did not follow the Magistrate's direction. He not only has filed pleadings and motions concerning extraneous matters; he has done this with a vengeance. More than 60 documents have been filed since the first Report issued by the Magistrate, "most of them by the plaintiff." Report of Magistrate at 1, Document No. 89 of the Record. Indeed, during one ninety-day period, the plaintiff filed nearly 30 documents. These filings frequently have been spurious. For instance, the plaintiff has moved for default judgments three times, twice against individuals who are not parties to this action. He has moved for sanctions regarding discovery against non-parties. He has also moved for "medical and parole plan furloughs as a legally free citizen of the United States." Finally, after bombarding the Magistrate with these and other equally inane motions, he filed three separate requests for the Magistrate to file recommendations.

Pro se litigants must be made aware that it is patently unwise to barrage a court with groundless or repetitive matters. Such activity is futile, and, more significantly, it tends to obscure the meritorious claims advanced in a particular suit. Moreover, each time a court is forced to address frivolous motions or claims, a great amount of time and energy is wasted—resources which would be more fruitfully expended in discharging the judiciary's obligation to redress violations of constitutional rights.

In addition, litigants proceeding in forma pauperis must recognize that they are not immune from the consequences of pursuing a vexatious course of litigation. Costs are "allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). Notably, a litigant who is granted leave to proceed in forma pauperis is *not* relieved of the obligation to pay taxable costs after his action is over, *even if he has litigated in good faith.* *See, e.g., Ross v. Robinson,* Civil No. 79–1210, slip op. at 2–3 (M.D.Pa., October 8, 1982) (plaintiff, a prisoner proceeding in forma pauperis, was required to pay $195.79 to the prevailing defendants for costs incurred in obtaining a transcript of a deposition); *Hudson v. Robinson,* Civil No. 79–876, slip op. at 1 (M.D.Pa., Mar. 10, 1981), *aff'd,* 688 F.2d 821 (3d Cir.1982) (plaintiff required to pay $109.80 to defendants for witness fees and expenses); *cf.* 28 U.S.C. § 1915(e) ("Judgment may be rendered for costs at the conclusion of the suit or action as in other cases"). A litigant's indigence often will not be regarded as a sufficient circumstance to excuse him from paying these costs. For example, in the *Ross* case, *supra,* the court directed the plaintiff to pay 25% of his prison wages to the defendants each month until the assessed sum had been fully paid.

Needless to say, a litigant who burdens his adversary with expenses concerning irrelevant matters will invariably tend to escalate the already high cost involved in resolving a lawsuit. If the vexatious litigant loses his case, he undoubtedly will be required to shoulder the burden of paying

these costs, for the court will be less likely to depart from the general rule that a prevailing party is entitled to costs. *See* Fed. R.Civ.P. 54(d). Since the sum of these costs will have been increased by the litigant's contumacious conduct, it seems quite fair to force him to bear the financial burden. *See, e.g., Marks v. Calendine,* 80 F.R.D. 24, 32 (N.D.W.Va.1978) ("The legislative and judicial 'helping hand,' allowing proceedings *in forma pauperis* has been extended to many who otherwise would have no opportunity to pursue their causes of action. The courts must not allow this privilege to be abused. Potential litigants, therefore, must be aware of their responsibility and the attendant costs in asserting vexatious claims."), *aff'd sub nom. Flint v. Haynes,* 651 F.2d 970 (4th Cir.1981).

■ Finally, the court observes that this might have been an appropriate case for the convening of a pretrial conference. When, as here, a case becomes "muddled" through the continuous filing of documents raising vacuous contentions, our Magistrates should feel free to convene a conference. Such a meeting can result in the elimination of insipid legal arguments and empty factual allegations, and can further promote judicial economy by sharpening the genuine questions involved in the dispute. To be sure, pretrial conferences are designed for the very purpose of shaping the issues involved in a case. *See* Fed.R.Civ.P. 16; Local Rule of Court 408. In the present case, the Magistrate had warned the plaintiff that he should confine his arguments to matters raised at the outset. The plaintiff ignored this caveat. A pretrial conference would have enabled the Magistrate to pare down the questions raised and to excise the frivolities. A conference might very well have resolved the entire action. Indeed, this court previously has noted:

> While a court may be reluctant to grant a motion for summary judgment in a *pro se* prisoner action where the prisoner's affidavit, liberally construed, may indicate a factual issue, such is not the case where the court has the opportunity at a pretrial conference to delve more deeply into the allegations and 'separate the wheat from the chaff.' . . . Plaintiff was given ample opportunity at the pretrial conference to present the facts he seeks to prove at trial. . . . As the facts he seeks to prove are presently understood, however, I see no reason for going through the exercise and expense of selecting a jury, with resultant inconvenience to its members, and for having the plaintiff's case presented, only to be required . . . to direct a verdict for the defendant and dismiss the jury. Rather than undertaking such pointless exercises in the face of a heavy caseload generally and a great number of prisoner cases in particular, the Court's time would be better spent by utilizing the deliberately flexible device of the pretrial conference. . . .

*Pifcho v. Brewer,* 77 F.R.D. 356, 357–58 (M.D.Pa.1977). Thus, if the Magistrate had held a pretrial conference and concluded that the plaintiff had no proof to support his nonfrivolous claims, dismissal might have been appropriate. *See Stackhouse v. Marks,* 556 F.Supp. 270 at 272 (M.D.Pa. 1982), *aff'd* C.A. No. 82–3239 (3d Cir., Feb. 22, 1983); *Pifcho v. Brewer,* 77 F.R.D. at 358. Even if dismissal would not have resulted, the Magistrate would have been able to focus attention on the real issues and, at a minimum, would have avoided the task of wading through a flood of irrelevant documents—a "pointless" exercise necessarily repeated by this court because of its obligation to independently review the record when evaluating the Magistrate's recommendations.

An appropriate Order will enter.

### ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Report and Recommendations of Magistrate Raymond J. Durkin, dated January 18, 1983 are adopted.

(2) The Clerk of Court is directed to strike from the docket the names of

all individuals named as defendants except Joe Cummins.