UNITED STATES of America,
Plaintiff,

v.

Jeannette SOTOMAYOR VAZQUEZ
(02);  Defendant.

No.  CR.  97–091(JAF).

United States District Court,
D. Puerto Rico.

Oct. 25, 1999.

Maria A. Dominguez–Victoriano, Asst. U.S. Attorney, Edna Rosario, Asst. U.S. Attorney, Guillermo Gil, U.S. Attorney, San Juan, PR, for plaintiff.

Francisco Rebollo–Casalduc, San Juan, PR, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Defendant Jeannette Sotomayor–Vázquez ("Sotomayor") renews her motion challenging the constitutionality of the instigation of the government's investigation of her due to the alleged unconstitutional delegation of authority by interim United States Attorney Guillermo Gil.[1]

---

1. We note that this is a slightly different motion than Defendant's original motion in that she is no longer directly challenging the validity of her indictment, an issue which we have previously found to be without merit. *See Docket Document No. 557.* Rather, in the present motion, Defendant alleges that there was an unconstitutional delegation of power to the Assistant United States Attorneys who led the prosecution against her. Given the significance and ripeness of this issue, we overlook the slight variation between the two motions and proceed to the merits of the claim. In doing so, we recognize that a challenge to the delegation of power underlying the entire prosecution necessarily includes the

We have already issued an Opinion and Order concerning the validity of Defendant Sotomayor's indictment. *Docket Document No. 557.*[2] We determined that the indictment was not legally flawed pursuant to Fed.R.Crim.P. 7(c)(1). *Id.* However, in that opinion, we declined to reach the constitutional issue and decided the question before us upon other grounds. *Id.* Defendant now renews her slightly-altered motion in light of the First Circuit's opinion in *United States v. Colon–Munoz,* 192 F.3d 210 (1st Cir.1999), which was pending decision at the time we issued our Opinion and Order. In that case, the Circuit determined that the defendant had failed to raise properly the constitutional issue prior to trial, thus constituting a waiver which effectively precluded appellate review. *Id.* Thus, Defendant asserts that since she preserved the issue in this case, the constitutional issue is ripe for review.

## I.

### Relevant Factual Background

Daniel López–Romo resigned as United States Attorney ("U.S.Attorney") for the District of Puerto Rico in 1993. At that time, United States Attorney General Janet Reno appointed Charles Fitzwilliam as temporary U.S. Attorney pursuant to 28 U.S.C. § 546(a). After the one-hundred and twenty-day statutory period for Fitzwilliam's appointment expired, 28 U.S.C § 546(c), the Judges for the District Court in Puerto Rico appointed Mr. Guillermo Gil as interim U.S. Attorney pursuant to 28 U.S.C. § 546(d). Mr. Gil's appointment was filed with the Clerk of this Court on September 10, 1993, as required by 28 U.S.C. § 546(d).[3] The President of the United States has not sent a nomination for U.S. Attorney for the District of Puerto Rico to the U.S. Senate for confirmation.

## II.

### Procedural History

Defendant alleges a somewhat different position from the issue in *Colon–Munoz.* She alleges that the length of Mr. Gil's interim appointment constitutes a *de facto* permanent appointment in violation of both the Appointments Clause, U.S. CONST. art. II, § 2, cl. 2, and the foundational doctrine of separation of powers. Therefore, Defendant maintains that Mr. Gil's continued unconstitutional presence as United States Attorney for the District of Puerto Rico renders all of the actions that he authorizes contrary to the law. In essence, Defendant asserts that Mr. Gil was without the power to authorize the initiation of her prosecution pursuant to Fed. R.Crim.P. 12(b)(1).

Defendant bases her stance upon the fact that this lawsuit was initiated following a local House of Representatives referral directly to Mr. Gil and the fact that the government has not denied that Mr. Gil instructed his subordinates to initiate the investigation or was consulted about or approved of important matters throughout the trial. Without commenting upon the merits or weight of this purported foundation, we now find that it is time to give this constitutional issue, which has been haunting the halls of the Puerto Rico Federal Court, the meticulous attention it deserves.

## III.

### The Appointments Clause

■ The Appointments Clause[4] "is a bulwark against one branch aggrandizing

---

indictment stage of the proceeding, thus encompassing the earlier motion.

2. We decline to repeat a recitation of the relevant facts in this Opinion and Order. Instead, we refer to and incorporate into this disposition the factual background of our earlier Opinion and Order.

3. A certified copy of Guillermo Gil's appointment as interim U.S. Attorney is attached to this opinion and order. In relevant part it states, "[t]he appointment will be effective on September 9, 1993, and will end upon the appointment and qualification of a successor to that office, as provided by law in such cases."

4. The Appointments Clause provides:
[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public

its power at the expense of another branch and preventing the diffusion of the appointment power.'" *Ryder v. United States,* 515 U.S. 177, 181, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). The Clause dictates that the President, with the advice and consent of the Senate, possesses the sole authority to appoint "principal" officers of the United States. *See Buckley v. Valeo,* 424 U.S. 1, 132, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam); *United States v. Germaine,* 99 U.S. 508, 509, 25 L.Ed. 482 (1878). On the other hand, Congress is empowered to authorize the appointment of "inferior" officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST. art. II, § 2, cl. 2.

■ Therefore, the first inquiry with which we grapple is whether United States Attorneys are principal or inferior officers. The Constitutional framers provided us with scant guidance as to what differentiates a principal from an inferior officer. *See Morrison v. Olson,* 487 U.S. 654, 671–77, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). Nonetheless, the Court has held a number of officials to be inferior within the meaning of the Clause. *See Id.* (independent counsel); *Edmond v. United States,* 520 U.S. 651, 658–66, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997) (judges of the United States Coast Guard Court of Appeals); *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 352–53, 51 S.Ct. 153, 75 L.Ed. 374 (1931) (United States commissioners); *Reagan v. United States,* 182 U.S. 419, 424, 21 S.Ct. 842, 45 L.Ed. 1162 (1901) (same); *Rice v. Ames,* 180 U.S. 371, 378, 21 S.Ct. 406, 45 L.Ed. 577 (1901) (same); *United States v. Eaton,* 169 U.S. 331, 343, 18 S.Ct. 374, 42 L.Ed. 767 (1898) (vice consuls); *Ex Parte Siebold,* 100 U.S. 371, 397–98, 25 L.Ed. 717 (1879) (election supervisors); *In re Hennen,* 38 U.S. (13 Pet.) 230, 258–59, 10 L.Ed. 138 (1839) (dis-

trict court clerks). Furthermore, other courts, which have addressed the issue, have concluded that United States Attorneys are inferior officers. *See United States v. Gantt,* 179 F.3d 782, 787–88 (1999) (citing *Edmond,* 520 U.S. at 662–63, 117 S.Ct. 1573); *United States v. Solomon,* 216 F.Supp. 835, 838–43 (S.D.N.Y.1963) (approving, in dicta, constitutionality of predecessor statute to 28 U.S.C. § 546(d) based on United States Attorneys being inferior officers). While never ·directly speaking upon the issue, · the Supreme Court, in dicta, has indicated that United States Attorneys are inferior officers. *See Myers v. United States,* 272 U.S. 52, 129, 47 S.Ct. 21, 71 L.Ed. 160 (1926); *see also Morrison,* 487 U.S. at 676–77, 108 S.Ct. 2597 (citing *Solomon* approvingly). Moreover, the office of Legal Counsel of the Department of Justice has explicitly adopted such an approach. *United States Attorneys—Suggested Appointment Power of the Attorney General—Constitutional Law (Article 2, § 2, cl. 2), 2 Op.O.L.C.* 58, 58–59 (Feb. 28, 1978).

In its most recent opinion pertaining to the subject, the *Morrison* Court refrained from explicating precisely what differentiates principal from inferior officers. *Morrison,* 487 U.S. at 671, 108 S.Ct. 2597. The Court, however, did find certain indicia important in reaching its decision. *Id.* Among them were that removal power was vested in a higher officer of the Executive branch; that the independent prosecutor's authority was not plenary, but rather circumscribed to specific, limited duties; that the independent prosecutors office was one of limited jurisdiction; and that the office was "limited in tenure." *Id.* at 671–72. In a different opinion, the Court noted another significant, but not dispositive factor: Whether the official exercises significant authority on behalf of the United States.

Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Con-

gress may by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments. U.S. CONST., Art. II, § 2, cl. 2.

*Edmond, 520 U.S. at 662, 117 S.Ct. 1573.* The Edmond *Court expounded that:*

> [t]he term "inferior officer" connotes a relationship with some higher ranking officer or officers below the President: whether one is an "inferior" officer depends on whether he has a superior ... "inferior officers" are officers whose work is directed and supervised at some level by others who are appointed by presidential nomination with the advice and consent of the Senate.

*Id.* at 662–63, 117 S.Ct. 1573.

We turn to a thorough examination of these factors. First, and foremost, it is indisputable that the Attorney General exercises significant control over United States Attorneys. Following a chaotic beginning with a decentralized legal system, Congress vested the Attorney General with "general superintended and direction duties \*\*\*" over United States Attorneys. Act of August 2, 1861, Ch. 37, 12 Stat. 185. In 1870, this power was further aggregated with Congress' creation of the Department of Justice. Act of June 22, 1870, Ch. 150, 16 Stat. 164. Today, there are numerous statutory grants expressly providing the Attorney General with significant supervisory power over United States Attorneys. *See* 28 U.S.C. § 509 (vesting Attorney General with "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice"); 516 (reserving the power to conduct litigation in which the United States is a party or has an interest to "officers of the Department of Justice, under the direction of the Attorney General"); 519 (directing that Attorney General shall supervise and "direct all United States Attorneys, assistant United States attorneys, and special attorneys appointed under Section 43 of this title in discharge of their respective duties"); *see also Department of Justice United States Attorney's Manual,* § 9–2.001 (authority of the United States Attorneys in criminal matters is subject to supervision and direction of Attorney General and his/her delegates). This supervisory power has been recognized by both the Supreme Court, *McGrain v. Daugherty,* 273 U.S. 135, 150, 47 S.Ct. 319, 71 L.Ed. 580 (1927); *United States v. San Jacinto Tin Co.,* 125 U.S. 273, 278–79, 8 S.Ct. 850, 31 L.Ed. 747 (1888), and the drafters of the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 48 Advisory Committee's note 2. Additionally, Congress has imposed upon United States Attorneys the concomitant statutory obligation to report to the Attorney General. *See* 28 U.S.C. § 547(5). Thus, United States Attorneys and the Attorney General work in a symbiotic relationship, with the Attorney General exercising supervisory functions and the United States Attorneys executing their delegated powers with the concomitant duty of informing the Attorney General of actions related to their offices.

In addition to this general grant of supervisory power, the Attorney General may, in certain enumerated instances, unequivocally divest a United States Attorney of jurisdiction over cases. Act of June 22, 1870, Sec. 5, 16 Stat. 162; *see also Sutherland v. Int'l Ins. Co. of New York,* 43 F.2d 969, 970 (2d Cir.1930) (L.Hand, J.) (recognizing that Attorney General has power to "discipline district attorneys in their own suits, dismiss or compromise them, [or] institute those they decline to press"); *Carey v. United States,* 132 Ct.Cl. 397, 132 F.Supp. 218 (1955) (finding that Attorney General, in a case where the President had been consulted and apparently approved, had power to suspend United States Attorney for acts taken without approval of Attorney General). The power to appoint Special Attorneys also lends support to this argument because the statute confers upon the Attorney General the power to appoint a separate attorney to investigate any legal proceeding which a United States Attorney is authorized to conduct. *See* 28 U.S.C. § 515(a). A somewhat corollary power to the Attorney General's authority to appoint Special Attorneys is the authority to "investigate the official acts, records, and accounts of ... United States Attorneys." 28 U.S.C. § 526(a)(1). The

Attorney General is additionally authorized to hire and fire Assistant United States Attorneys, *see* 28 U.S.C. § 542; establish the physical location of United States Attorney's offices, *see* 28 U.S.C. § 545(b); determine the salaries of United States Attorneys, *see* 28 U.S.C. § 548; authorize "[n]ecessary office expenses" of United States Attorneys, *see* 28 U.S.C. § 549; and approve the United States Attorneys' hiring of "clerical assistants, messengers, and private process servers." 28 U.S.C. § 550.

■ The above discussion clearly indicates the Attorney General's control over United States Attorneys. The next logical inquiry is what, if any, powers over interim United States Attorneys does the Attorney General not possess. The only immediately apparent power which fits this category is the removal of interim United States Attorneys. While the Attorney General may suspend an interim United States Attorney, she does not possess the statutory authority to remove one appointed in accordance with 28 U.S.C. § 546(d). The power to remove is undoubtedly an important safeguard upon an officer's actions. *See Edmond*, 520 U.S. at 664, 117 S.Ct. 1573; *Bowsher*, 478 U.S. at 724, 106 S.Ct. 3181 (stating that for Congress to "draw to itself, or to either branch of it, the power to remove or the right to participate in the exercise of that power … would be … to infringe the constitutional principle of the separation of governmental powers'") (quoting *Myers*, 272 U.S. at 161, 47 S.Ct. 21). Nonetheless, we have not unearthed a single case in which a court has held that the power to remove is dispositive as to whether an officer is "principal" or "inferior." Rather, the removal power is one of many factors which courts examine in making the distinction and determining whether an Executive official directs or supervises the official. *Edmond*, 520 U.S. at 663, 117 S.Ct. 1573.

In conclusion, we note that the position of interim United States Attorneys is not circumscribed in either tenure or scope. Although these two factors were examined by the Court in *Morrison*, 487 U.S. at 671, 108 S.Ct. 2597, the Court later retrenched in *Edmond* and found that *Morrison* did not "purport to set forth a definitive test for" determining whether an officer is a principal or inferior official. *Edmond*, 520 U.S. at 661, 117 S.Ct. 1573.

Furthermore, there is a significant difference between *Morrison* and the instant case. The office of independent counsel, different in scope, duration, and kind than that of a United States Attorney, controlled the determination in *Morrison*. The Court was primarily concerned with the independent counsel's autonomous and virtually undefined discretion under the independent counsel provisions of the Ethics in Government Act, 28 U.S.C. §§ 591–599. Since United States Attorneys are statutorily under the direction and control of the Attorney General, we are not faced with a similar situation. Therefore, we find that United States Attorneys, including interim United States Attorneys, are "inferior" officers for Appointments Clause purposes.

■ The next conceivable challenge is that the Appointments Clause bars judicial appointment of interim United States Attorneys. However, we find this position to be patently unsupportable.

Since the Civil War era, Congress has empowered the judiciary to fill vacancies in the office of United States Attorneys. *See* Act of March 3, 1863, chap. 93, § 2, 12 Stat. 768 (1863) (Rev.Stat.1873, § 793). This authority is now codified at 28 U.S.C. § 546(d).[5] This alone would seem to answer the question. However, we go further in the hopes of ending the stream of pernicious inquiries into Mr. Gil's position.

---

5. The statute provides:
   If the appointment expires under subsection (c)(2) [the Attorney General's interim appointment], the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.
   28 U.S.C. § 546(d).

■ The power to appoint is not limited to officers in the same branch of government. *See Morrison,* 487 U.S. at 672–73, 108 S.Ct. 2597 (citing *Ex Parte Siebold,* 100 U.S. at 397–98). As such, interbranch appointments, such as the instant case, in which judicial officers appoint an executive official, are not inherently antithetical to the Appointments Clause. *Id.; see also Bowsher v. Synar,* 478 U.S. 714, 727–33, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (recognizing that President nominates Comptroller General which is a Legislative Branch position); *id.* at 746, 106 S.Ct. 3181 (Stevens, J., concurring) (pointing out that President is also statutorily authorized to appoint the Librarian of Congress, 2 U.S.C. § 136; the Architect of the Capitol, 40 U.S.C. § 162; and the Public Printer, 44 U.S.C. § 301). Furthermore, the Court, relying upon the authority of district courts to appoint interim United States Attorneys, has expressed the view that "courts are especially well qualified to appoint prosecutors," *Morrison,* 487 U.S. at 676 n. 13, 108 S.Ct. 2597, and that there is no "inherent incongruity" in such actions. *Id.* at 676, 108 S.Ct. 2597. Thus, history dictates that interbranch appointments do not *per se* violate the Appointments Clause.

■ The only other arguably questionable issue in having district courts appoint interim United States Attorneys seems to be whether there is a conflict of interest problem, since these officials appear before the persons who appointed them. *See Morrison,* 487 U.S. at 677, 108 S.Ct. 2597 (noting the statutory preclusion of Special Division judges from participating in matters brought by such independent counsels). As a practical matter, recusal of district judges from cases brought by United States Attorneys which they appointed would directly contradict Congress' very purpose in enacting the statute—not allowing the system of justice to grind to a halt because of inaction by other branches of government. The *Morrison* Court, while not explicitly holding to the contrary, did allude to the fact that courts appoint federal defenders for indigent parties and these appointees may, and often do, appear before those judges who have appointed them. *Id.* at 677 n. 14, 108 S.Ct. 2597. While we are not purporting that this is an analogous situation, particularly since the appointment of defense counsel is constitutionally authorized, U.S. CONST. amend. VI, the congruities between the situations merit consideration. Another similar situation occurs when district courts appoint private practitioners to prosecute criminal contempt actions. In such instances, there is no requirement that the contempt proceedings be held before a different district judge than the one who appointed the practitioner. *See Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 793–801, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

■ In light of the foregoing, we find that the Appointments Clause does not constitutionally preclude district judges from appointing interim United States Attorneys pursuant to 28 U.S.C. § 546(d).

## IV.

### *The Separation of Powers Doctrine*

■ We turn to an exploration of the separation of powers doctrine in the context of 28 U.S.C. § 546(d).[6] The separation of powers is not a constitutional mandate. Nonetheless, it is one of the basic foundations of the United States federalist system by which "[t]he Constitution [seeks] to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." *Bowsher,* 478 U.S. at 721, 106 S.Ct. 3181. The Supreme Court has, accordingly, given both voice and importance to the doctrine. *See, e.g., Mistretta v. United States,* 488 U.S. 361, 380, 109

---

6. We again note that Defendant has not argued that 28 U.S.C. § 546(d) *per se* violates the doctrine of separation of powers. However, we explore the issue fully to avoid any future challenges to the interim United States Attorney's powers in this case.

S.Ct. 647, 102 L.Ed.2d 714 (1989); *Bowsher,* 478 U.S. at 721–728, 106 S.Ct. 3181; *I.N.S. v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). The driving force behind separating and diffusing governmental power is "to secure liberty." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). "The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, or either of the others, has often been stressed and is hardly open to serious question." *Humphrey's Ex'r v. United States,* 295 U.S. 602, 629–30, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). "That this system of divisions and separations of powers produces conflicts, confusion, and discordance at times is inherent, but it was deliberately so structured to assure full, vigorous, and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power." *Bowsher* 478 U.S. at 722, 106 S.Ct. 3181.

In adhering to this system, the Court has not blindly adhered to a formalistic division. *Mistretta,* 488 U.S. at 381, 109 S.Ct. 647 (rejecting "the notion that the three Branches must be entirely separate and distinct"). Rather, the constitution "enjoins upon its branches separatedness but interdependence, autonomy but reciprocity." *Id.* at 380, 109 S.Ct. 647 (quoting *Youngstown,* 343 U.S. at 635, 72 S.Ct. 863 (Jackson, J., concurring)). Indeed, James Madison noted in the Federalist Papers that the doctrine of separation of powers did not mean "that these departments ought to have no partial agency in, or control over, the acts of each other." The Federalist No. 47, p. 325 (James Madison) (J. Cooke ed.1961). Thus, in practice, the Court has adopted an approach that does "not hesitate[ ] to strike down provisions of law that either accrete to a single Branch powers more appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch." *Mistretta,* 488

U.S. at 380, 109 S.Ct. 647 (citing *Bowsher,* 478 U.S. at 714, 106 S.Ct. 3181; *Chadha,* 462 U.S. at 919, 103 S.Ct. 2764; *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). The cases in which the Court has expressed concern have largely dealt with legislation expanding Congress' authority into areas reserved to either the Judicial or Executive Branches. *See, e.g., Bowsher,* 478 U.S. at 733–34, 106 S.Ct. 3181; *Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise, Inc.,* 501 U.S. 252, 269 n. 15, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991).

■ We do not have such a situation before us. Rather, section 546(d), fashioned as a separation of powers violation, would conceivably interfere with the President's authority to appoint a United States Attorney with the advice and consent of the Senate. Accordingly, we explore any potential dangers to the separation of powers in such a situation.

The clearest potential controversy is whether section 546(d) impairs executive authority or action. Given the plain language of the statute, the resounding answer is no. *See* 28 U.S.C. § 546(d) (providing that district courts may appoint an interim United States Attorney "until the vacancy is filled"). Since Congress has conferred the power to appoint United States Attorneys only upon the President, 28 U.S.C. § 541(a), the natural conclusion is that judicially appointed interim United States Attorneys have tenure only until the President exercises his authority. This construction in no way impedes upon Executive action or authority. Moreover, the only court to address this issue has reached the same conclusion. *See Solomon,* 216 F.Supp. at 835.

■ Looking beyond mere semantics, criminal prosecutions have been and remain the traditional domain of the Executive Branch. *See Buckley,* 424 U.S. at 138, 96 S.Ct. 612; *see also* U.S. CONST., Art. II,

§§ 1–3. Thus, the President has authority over the activities of the organs and individuals enforcing the laws. In exercising this power, the Executive, as a practical matter, has delegated much of this authority. As such, we are faced with a question of the limits of the President's power to delegate his authority in enforcing the laws of the United States; or, more fitting to the current situation, whether Congress' delegation of the appointment of interim United States Attorneys to district courts effectively encroaches upon Executive power or authority.

Section 546(d) is not a statutory windfall, but rather a rational adaptation to ensure the efficient functioning of the judicial system. The powers provided are strictly circumscribed and apply only in situations when there is a vacancy in the office of United States Attorney and the Attorney General's one-hundred and twenty-day appointment of an interim United States Attorney has expired. *Colon*, 576 F.2d at 6–7. As previously discussed, the interim appointment endures only until the President, with the advice and consent of the Senate, effectuates his authority under 28 U.S.C. § 541(a) or makes a recess appointment pursuant to Article II. U.S. CONST., Art. II, § 3; *see* 16 Ops. Att'y Gen. at 540; *Solomon*, 216 F.Supp. at 842–43. As such, section 546(d) does not deprive the President of a means "to ensure the 'faithful execution' of the laws." *Morrison*, 487 U.S. at 693, 108 S.Ct. 2597. Moreover, section 546(d) does not confer upon district courts any supervisory or discretionary authority over the interim United States Attorneys whom they have appointed. Rather, as we previously concluded, the Attorney General is the person to whom such authority is vested. Finally, section 546(d) in no way purports to grant district courts the authority to remove interim United States Attorneys whom they have appointed. *Cf.* 28 U.S.C. § 541(c) (vesting power to remove "[e]ach" United States Attorney exclusively to the President); *see also Solomon*, 216 F.Supp. at 843; *U.S. Attorneys—Removal of Court-Appointed U.S. Attorney (28 U.S.C.*

*§§ 541, 546)*, 3 Op.O.L.C. 448 (1979). Since section 541(c) applies to "[e]ach" United States Attorney, not only to those appointed under section 541, the *Solomon* court correctly interpreted the statute to apply to all United States Attorneys, "regardless of the nature of [their] appointment." 216 F.Supp. at 843.

Read in its proper light, section 546(d) does not usurp Presidential authority in appointing United States Attorneys. Rather, it is a practical and, at times, necessary counterpart to that power. It allows the continued functioning of government until the President appoints a United States Attorney. In the process, the President retains all supervisory and removal controls over interim United States Attorneys.

▮ A less apparent, possible separation of powers inquiry is whether section 546(d) impairs the constitutional functions of the judicial branch. Since, in its very essence, it cannot be seriously contended that section 546(d) interferes with the jurisdiction of the courts of the United States, the inquiry necessarily turns to one of judicial impartiality and integrity and any possible impairment of federal judges' roles pursuant to Article III. U.S. CONST. art. III.

While judges primarily perform the adjudicatory role in our constitutional system, the power to make certain appointments does not, by its very essence, interfere or abrogate this role. *See Morrison*, 487 U.S. at 679 n. 16, 108 S.Ct. 2597 (noting that judicial appointment power does not *"per se"* conflict with judges' enumerated Article III powers and citing specific instances, such as United States commissioners and magistrates), *reaffirmed by Mistretta*, 488 U.S. at 389 n. 16, 109 S.Ct. 647. Section 546(d) also does not unconstitutionally force federal judges into the political arena. The powers conferred under section 546(d) are permissive, not mandatory. *See* 28 U.S.C. § 546(d) (courts "may" appoint interim United States At-

torneys). Moreover, judges do not operate in a vacuum, completely insulated from all political affairs. Rather, they are functioning members of a society. They are aware of public sentiment but insulated in a way, life tenure and non-elected positions, that politicians are not. In such a situation, there is a drastically decreased possibility of litigants seriously entertaining questions of impartiality of judges who have appointed interim United States Attorneys in their district. The judicial offices do not depend upon political sentiment and there is little incentive to frustrate the very system to which they have sworn an oath and to which they owe their position. This is buttressed by the reality and prevalent practice of judges appointing defense counsel who appear before them. Furthermore, the President, with the advice and consent of the Senate, is always free to effectively veto the judicially-selected interim United States Attorney and appoint someone of his choosing. We fail to see how section 546(d) unconstitutionally impairs district judicial functions.

## V.

### *A Historical and Policy Analysis*

A brief perusal through the history of the appointment of interim United States Attorneys provides further support for the constitutionality of section 546(d). In 1863, Congress began the practice at issue in this case by vesting the Circuit Justice with the authority to fill a vacancy in the office of United States Attorney until the President appointed a duly-qualified candidate. *See* Act to Give Greater Efficiency to the Judicial System of the United States of March 3, 1863, 12 Stat. 768. Thirty-six years later, Congress transferred the power to the district courts because "the circuit justice is not always to be found in the circuit and time is wasted in ascertaining his whereabouts." H.R.Rep. No. 1317, 55th Cong., 2d Sess. 1 (1898). Congress expounded that such power properly belonged in the district because it avoided any unnecessary impediment to the normal court functions. *Id.*

While modern communications and technology have eliminated any need for the appointment of interim United States Attorneys to remain in the judges of the district in which there is a vacancy, Congress has not disturbed the statutory authorization. The only change in the structure occurred in 1995 after the Attorney General explicitly requested that the power to appoint interim United States Attorneys be transferred to his office. Congress' reaction was the enactment of the current section 546(d) which vests the Attorney General with the power to appoint an interim United States Attorney subject to a one-hundred and twenty-day limitation, after which time the power is reserved to the district courts to make an interim appointment. *Compare* 131 Cong. Rec. 18347, *with* Pub.L. No. 99–646, Sec. 68, 100 Stat. 3616. Thus, section 546(d), in its current form, performs a dual function: It ensures that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power under 28 U.S.C. § 541.

## VI.

### *Defendant's "As–Applied" Challenge*

■ Defendant's main contention is that section 546(d) is unconstitutional as applied in this case. Defendant's challenge centers around the contention that the sheer length of Mr. Gil's appointment, currently six years and one month, constitutes a *de facto* permanent appointment. We interpret the relevant inquiry to consist of two prongs: Whether the length of the interim United States Attorney's appointment violates Congress' intent in enacting sections 541 and 546 and whether Mr. Gil has become a *de facto* permanent officer in violation of the separation of powers.

We begin the first inquiry by examining the statutes in order to discern Congressional intent. *See, e.g., Lewis v. United States,* 523 U.S. 155, 118 S.Ct. 1135, 1150, 140 L.Ed.2d 271 (1998). Section 546(d), by

its plain language, does not purport to impose a limit to the length of interim judicial appointments. *See* 28 U.S.C. § 546(d) (authorizing judicial appointment until "the vacancy is filled"). This is particularly relevant given Congress' recent consideration and amendment of the statute. *See* 28 U.S.C. § 546(c) (granting Attorney General power to appoint interim United States Attorney, but limiting the duration of the appointment to one-hundred and twenty days). The logical conclusion is that Congress chose not to limit the term of judicial interim appointments.

To lend support to this contention, a traversal through the legislative history of section 546(d) evinces a similar conclusion. There is not one instance of controversy nor of dissension to the ordinary meaning of section 546(d). While expressly noting the limitation imposed upon the Attorney General's interim appointment, Congress makes no similar provision regarding judicial appointments. *See* 132 Cong.Rec. 32806 (October 17, 1986).

Furthermore, a plain language interpretation of section 546(d) in no way conflicts with the President's power to appoint United States Attorneys pursuant to section 541(a). *See* 28 U.S.C. § 541(a). Section 541(a), like section 546(d), imposes no time limit upon Presidential appointment of United States Attorneys. Thus, we read section 546(d) as a companion statute to section 541(a), which ensures the efficient functioning of government while preserving Executive authority to appoint permanent United States Attorneys.

Lastly, we examine the relationship between the tenure provisions of sections 546(d) and 541(b). Under section 541(b), United States Attorneys are positions of limited tenure. See 28 U.S.C. § 541(b) (limiting terms to four years). At first blush, Mr. Gil's six-year tenure clearly appears to circumvent the Congressional intent of section 541(b). However, upon closer inspection, that is not the case. Section 541(b), after proscribing a four-year term limit, states that "[o]n the expiration of his term, a United States attor-

ney shall continue to perform the duties of his office until his successor is appointed and qualifies." *Id.* In this way, both sections 546(d) and 541(b) contain the same relief tenure provisions and are compatible. We find that section 546(d) as applied in this case is not contrary to Congressional intent in enacting the statute.

██ As with the first, we begin the second inquiry with a look at the plain meaning of the term. According to Black's Law Dictionary, *de facto* is defined as "[i]n fact, in deed, actually.... This phrase is used to characterize an officer, a government, a past action, or a state of affairs which must be accepted for all practical purposes, but is illegal or illegitimate." BLACK'S LAW DICTIONARY 416 (6th ed.1990). Since we have determined that interim United States Attorney Gil's appointment is not unconstitutional, it necessarily follows that it is not illegal or illegitimate. Mr. Gil has not become a *de facto* permanent officer. We find that section 546(d) is not unconstitutional as applied in this case.

## VII.

### *Conclusion*

In accordance with the foregoing, we **DENY** Defendant's motion. This Opinion and Order disposes of *Docket Document No. 1014.*

**IT IS SO ORDERED.**