**UNITED STATES of America,
Plaintiff,**

**v.**

**Carlos SANTANA (02), Defendant.**

**No. Crim. 99–097.**

United States District Court,
D. Puerto Rico.

Nov. 4, 1999.

Asst. U.S. Attorney Timothy Vasquez, Guillermo Gil, U.S. Attorney, San Juan, PR, for plaintiff.

Maria H. Sandoval, San Juan, PR, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Defendant, Carlos Santana, moves to dismiss his indictment, to compel discovery to support his motion to dismiss, and for the disqualification pursuant to 28 U.S.C. § 455 of all the district and magistrate judges of the federal District of Puerto Rico from ruling on the motion to dismiss and the recusal motion.

### Relevant Factual Synopsis

Daniel López–Romo resigned as United States Attorney ("U.S.Attorney") for the District of Puerto Rico in 1993. At that time, United States Attorney General Janet Reno appointed Charles Fitzwilliam as temporary U.S. Attorney pursuant to 28 U.S.C. § 546(a). After the one-hundred and twenty-day statutory period for Fitz-

william's appointment expired, 28 U.S.C § 546(c), the judges for the District Court in Puerto Rico appointed Mr. Guillermo Gil as interim U.S. Attorney pursuant to 28 U.S.C. § 546(d). The district judges filed Mr. Gil's appointment with the Clerk of this Court on September 10, 1993, as required by 28 U.S.C. § 546(d). As of the date of this Opinion and Order, the President of the United States has yet to send a nomination for U.S. Attorney for the District of Puerto Rico to the United States Senate for confirmation pursuant to 28 U.S.C. § 541(a) or to exercise his power to make a recess appointment pursuant to Article II. U.S. Const., Art. II, § 3.

A federal grand jury indicted Defendant Santana on March 23, 1999, for possession of cocaine with the intent to distribute and aiding and abetting said crime pursuant to 21 U.S.C. §§ 841(a)(1) and 952(a) and 18 U.S.C. § 2. Mr. Miguel Pereira, Deputy Chief of the Criminal Division of the U.S. Attorney's Office, and Assistant U.S. Attorney Timothy Vasquez signed Defendant's indictment. Interim U.S. Attorney Gil did not sign Defendant's indictment. Defendant, nonetheless, contends that the actions taken by Mr. Pereira and Mr. Vasquez are unconstitutional because they are done pursuant to Mr. Gil's allegedly illegitimate authority.

### Recusal pursuant to 28 U.S.C. § 455

■ Two statutes govern recusal of judges on the grounds of personal bias, prejudice or lack of impartiality, 28 U.S.C. §§ 144 and 455.[1] In this case, Defendant properly limits his challenge to section 455, as section 144 is clearly inapplicable since it applies only to district courts and requires a demonstration of personal bias

and prejudice in fact, rather than a mere appearance of partiality. *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir. 1990). Section 455, on the other hand, applies to any justice, judge or magistrate of the United States and is based on an objective standard requiring a judge to recuse himself whenever there is even the appearance of judicial bias. *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976); *see also In re Martinez–Cátala*, 129 F.3d 213 (1st Cir.1997).

■ Section 455, unlike section 144, does not stipulate a formal procedure, such as the filing of an affidavit, by which claims arising under it must be raised. Instead, section 455 places the duty directly upon the judge to evaluate his own actions. *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C.Cir.1981); 13A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3550 at 629. Section 455 also does not require the judge to accept the allegations of the motion as true. *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1019 n. 6 (5th Cir.1981). Rather, the proper test to be applied is whether a reasonable person with knowledge of all of the circumstances might question the judge's impartiality. *In re Beard*, 811 F.2d 818, 827 (4th Cir.1987); *Phillips*, 637 F.2d at 1019.

■ The purpose of the disqualification statute is to guard against personal, extrajudicial bias or the appearance of partiality arising out of such bias. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (stating that section 455(a) is

---

1. Section 144 provides, in pertinent part:
   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.
And section 455 provides, in pertinent part:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned ...
28 U.S.C. § 455.

engineered to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."); *see also Cowden,* 545 F.2d at 265 (citing H.Rep. No. 1453, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News p. 6355); *Davis v. Board of School Comm'rs of Mobile County,* 517 F.2d 1044 (5th Cir. 1975).

The policy reasons for requiring factual, extrajudicial evidence of bias are clear: If litigants could remove a judge simply by crying "bias" without any further showing, parties would have the power to manipulate the selection of judges and would enjoy "a random veto over the assignment of judges." *Cordova–Gonzalez v. United States,* 987 F.Supp. 87, 90 (D.P.R.1997); *Cowden,* 545 F.2d at 266 ("[T]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.") (citations omitted).

> Were less required, a judge could abdicate in difficult cases at the mere sound of controversy, or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias.... This restricted mandate to disqualify is calculated to induce a judge to tread the narrow path between timidity and tenacity.

*El Fénix de Puerto Rico v. M/Y JOHANNY,* 36 F.3d 136, 141 (1st Cir.1994) (citations omitted). "To hold otherwise would transform recusal motions into tactical weapons which prosecutors and private lawyers alike could trigger by manipulating the gossamer strands of speculation and surmise." *In re United States,* 158 F.3d 26, 35 (1st Cir.1998).

### Analysis

As the First Circuit has noted, "cases implicating section 455(a) are fact-specific, and thus sui generis." *Id.* at 31. Thus, we begin by looking at the facts presented to discern whether or not actual prejudice can be shown. Upon inspection, we find that Defendant has not offered even a scintilla of evidence demonstrating prejudice. *See Id.* at 30 (stating that "compulsory recusal must require more than subjective fears, unsupported accusations, or unfounded surprise"). Rather, Defendant premises his argument upon an affidavit of his attorney attesting to a wide range of facts, some of which are patently incorrect and others for which no further verification is offered. *See Id.* at 33 (stating that "despite the [party]'s claim of a sinister alliance, there is no explanation of what relationship, if any, existed between the two [actors]. Such an undeveloped suggestion, in and of itself, does not mandate recusal.") (internal citations omitted). While we refuse to dignify the vast majority of flagrant aspersions that permeate Defendant's attorney's affidavit, we feel there are a few instances to which we must respond.

First and foremost, this Court played no part in any political agreement allegedly engineered to choose candidates for federal district judges or the U.S. Attorney for this District. If Defendant is searching for information about the possible existence of such an arrangement, the proper forum is not this Court. Secondly, this Court has never attended a meeting with Federal Bureau of Investigations Director Louis Freeh, a former federal judge, to discuss Mr. Gil's appointment. While it is true that, while in Puerto Rico, Mr. Freeh has paid courtesy visits to the judges of this District, this Court never discussed Mr. Gil's appointment or tenure with Mr. Freeh. Moreover, this Court has never participated in a discussion concerning the possible removal of Mr. Gil. We do not have the power to make such a decision. *See* 69 F.Supp.2d at 294. Therefore, any such discussion would be fruitless and improper. These are simply a few of the baseless allegations which Defendant seeks to explore under the rubric of the "appearance of partiality." A simple perusal of the affidavit indicates the frivolity of the

accusations and the maliciousness of the attack.

The main basis which Defendant contends mandates recusal of all district judges in the District of Puerto Rico is that he is seeking an evidentiary hearing on the motion to dismiss and all of the judges would "necessarily be required to testify" in such a hearing to respond to the allegations of the affidavit. Therefore, Defendant maintains that since the Canon of Ethics prohibits judges from being both witnesses and judges in the same proceeding, every district and magistrate judge in the District of Puerto Rico must recuse her or himself. However, in so asserting, Defendant is seeking to circumvent standard procedure in deciding upon motions for recusal.

We will not pander to this behavior. The First Circuit has noted that recusal motions "customarily are decided by the judge whom the movant seeks to disqualify, [and] almost always involve the actions or relationships of the judge and almost always require the judge to appraise her own situation." *Id.* The Circuit further noted that although a judge has the discretion to recuse herself from hearing a motion under section 455, "no reported case or accepted principle of law compels her to do so." *Id.* at 34. As such, there is absolutely no bar, or logical reason in this case, for us to recuse ourselves in deciding upon the section 455 motion.

Furthermore, by applying the reasonable person standard applicable for section 455 motions, we find that Defendant's argument is wholly without merit. First, section 455 does not operate in a vacuum. The realities of each situation must be assessed. Here, Defendant is asserting that each district judge, two of whom were not federal judges at the time of Mr. Gil's interim appointment, and all three magis-

trate judges should recuse themselves. The purported reason for this expansive motion is that each currently sitting judge "could" have been privy to "significant" clandestine activities leading to Mr. Gil's interim appointment.[2] The foundation for these "significant" activities is the bare affidavit of Defendant's attorney in this case which, as we previously noted, is replete of incorrect and sinister vituperations. We hardly find this persuasive.

Second, Defendant has not submitted any evidence asserting or proving that this Court harbors a biased opinion in this case. Defendant's paucity of evidentiary support falls far short of what is required under section 455. *See In re United States,* 158 F.3d at 34 (stating that " § 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's ruling or finding. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fairminded person could not set aside when judging the dispute.").

Finally, the objective reality of the current situation militates against Defendant's overreaching omnibus motion. Were we, along with every other sitting district judge, to recuse ourselves based upon Defendant's motion, the wheels of justice would grind to a screeching halt in the District of Puerto Rico. Clearly this could not be Congress' intent in enacting the statute. *See Cowden,* 545 F.2d at 265–66. Defendant simply has not asserted a plausible appearance of partiality in this case.

Moreover, Defendant's primary caselaw support for his contention in no way mandates our recusal in these circumstances.

2. We note that Defendant then retrenches in the case of the magistrate judges and asserts that the three sitting magistrates should recuse themselves because only Article III judges have the authority to hear constitutional issues. We need not explore these issues further, but merely point out the discrepancy to better illuminate the absurdity of Defendant's argument.

In *United States v. Garrudo,* 869 F.Supp. 1574 (S.D.Fla.1994), a district judge from Georgia determined that the original district judge should have recused himself from defendant's criminal case because he was under criminal investigation and the public may perceive him to be biased. This opinion was affirmed by a panel of the Eleventh Circuit but that opinion was later vacated when the Circuit granted a rehearing *en banc. See United States v. Cerceda,* 139 F.3d 847, 852–55 (11th Cir. 1998), *vacated,* 161 F.3d 652 (11th Cir. 1998). Subsequently, the equally split Circuit affirmed the district court holding by operation of law. *See United States v. Cerceda,* 172 F.3d 806, 811–12 & n. 6 (11th Cir.1999) (en banc) (per curiam) (affirming solely because court was equally divided but noting that doing so does not necessarily adopt opinion of district court). Thus, the end result of *Garrudo* is that the original district judge should have recused himself, but we are left to ponder the reasons why this is so. Such a case, which also holds no precedential value upon us, is hardly a harbinger of the requisite result here.

Defendant's attempt to equate our situation with the Independent Counsel Act likewise fails. This is primarily so because the office of independent counsel differs in scope, duration, and kind from that of interim U.S. Attorneys. In dealing with a challenge to the powers of the independent prosecutor, the Supreme Court expressly noted that it was primarily concerned with the independent counsel's autonomous, unfettered, and virtually undefined discretion under the Ethics in Government Act, 28 U.S.C. §§ 591–599. *Morrison v. Olson,* 487 U.S. 654, 671, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (noting that independent prosecutor "possesses a degree of independent discretion to exercise the powers delegated to her under the Act").

Interim U.S. Attorneys, on the other hand, are under the statutory direction and control of the Attorney General. *See, e.g.,* 28 U.S.C. §§ 509, 516, 519; *See* 69

F.Supp.2d at 289–91. Thus, the two situations are not analogous.

Finally, Defendant resorts to broad, but nonetheless noble, notions of judicial integrity and objectivity. While these concepts are indisputably pillars upon which our system of justice is founded, Defendant's incantation of them represents his last quixotic attempt to rescue his doomed recusal motion. This Court has not encroached upon these axiomatic principles and will continue to fiercely and interminably uphold them. During the six year period in which Mr. Gil has been the interim U.S. Attorney for this District, we have handled countless cases which he has both implicitly and explicitly authorized. In each and every one, we have maintained the same level of decorum, impartiality, and respect for the system with which we are proceeding in this case. To recuse ourselves in this case would be to cast a pall of doubt upon our earlier actions and compromise our loyalty to the Constitution and this Court. We refuse to do so. *See In re United States,* 158 F.3d at 35 (stating that "[j]ust as a judge must assiduously avoid participating 'in any proceeding in which h[er] impartiality might reasonably be questioned,' so, too, a judge must avoid yielding in the face of unfounded insinuations. A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, ex proprio vigore, create a cloud on her impartiality.") (internal citations omitted).

### Defendant's Motion to Dismiss

Defendant moves to dismiss his indictment alleging that: (1) section 546(d) is unconstitutional on its face because it violates the Appointments Clause; (2) section 546(d) is unconstitutional because it violates the separation of powers doctrine; (3) section 546(d) is unconstitutional as applied in this case; and (4) this Court lacks subject matter jurisdiction over this matter.

We begin by noting that we have recently addressed this very matter in a detailed Opinion and Order in *United States v. Sotomayor Vazquez*, 69 F.Supp.2d 286 (D.P.R.1999). We herein incorporate and adopt the arguments and reasoning of that Opinion and Order. As such, we will only briefly summarize our unchanged determinations here.

### 1. The Appointments Clause

Defendant alleges that section 546(d) violates the Appointments Clause.[3] U.S. CONST., Art. II. § 2, cl. 2. We disagree.

■ Based upon our examination of the relevant case law and full explication in our prior Opinion and Order, we find that interim U.S. Attorneys are "inferior" officers for Appointment Clause purposes and that, as such, they do not need to be appointed by the President with the advice and consent of the Senate. *See* 69 F.Supp.2d at 289–91. Furthermore, we find no prohibition against judicial appointments of interim U.S. Attorneys in the Appointments Clause. *See id.* at 292. Finally, we find no conflict of interest in district courts appointing interim U.S. Attorneys who appear before them. *See id.* at 292. We find that the Appointments Clause does not constitutionally preclude district judges from appointing interim United States Attorneys pursuant to 28 U.S.C. § 546(d).

### 2. The Separation of Powers Doctrine

Defendant next argues that section 546(d) violates the doctrine of separation of powers. Again, we disagree.

■ We perceive two potential separation of powers violations: interference with the President's authority to appoint a U.S. Attorney with the advice and consent of the Senate and impairment of the constitutional functions of the judicial branch. The first, through Defendant's own admission, has not occurred because "President Clinton chose not to comply with his duty under [the Appointments Clause]." *See Docket Document No. 54, p. 4.* Thus, one can hardly assert that Presidential inaction constitutes a usurpation of executive authority. *See* 69 F.Supp.2d at 293–94. Rather, read in its proper light, section 546(d) is an essential analogue to the President's power to appoint. *See id.* at 294–95.

■ The second contention is equally problematic, primarily because the power to make certain appointments does not *per se* abrogate a district judge's adjudicatory role in our federal system. The powers are permissive, and the President, with the advice and consent of the Senate, at all times retains the power to essentially veto the judicially selected interim U.S. Attorney and appoint someone of his choosing.

### 3. Defendant's "As–Applied" Challenge

■ Defendant additionally contends that the length of Mr. Gil's appointment constitutes a *de facto* permanent appointment and thus violates congressional intent in enacting section 541 and the Appointments Clause. We, once again, disagree.

From a perusal through the legislative history of section 541, we find that congress explicitly chose not to limit the term of judicial interim appointments. *See id.* at 295–96. Thus, the application of section 546(d) in this case does not violate Congress' intent. Moreover, since we find that interim U.S. Attorney Gil's appointment is not unconstitutional, we find that he has not become a *de facto* permanent

---

**3.** The Appointments Clause provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST., Art. II, § 2, cl. 2.

**232**

officer. Section 546(d) is not unconstitutional as applied in this case.

### 4. Subject Matter Jurisdiction over this Case

Defendant's final contention is that we lack subject matter jurisdiction over this matter because Mr. Gil's interim appointment is constitutionally defective. Since we find that Mr. Gil's interim appointment is not constitutionally defective, we find that we have subject matter jurisdiction over this case. We deny Defendant's motion to dismiss his indictment.

### Motion to Compel Discovery

■ Defendant's final motion is to compel discovery to support his motion to dismiss. However, to consider the motion to dismiss, there is no need for the requested discovery. Notwithstanding, we feel compelled to comment upon its construction. Defendant has submitted a capacious and virtually unbounded discovery motion seeking vast amounts of information from Interim U.S. Attorney Gil; the District of Puerto Rico Attorney's office and staff; the United States District Court for the District of Puerto Rico; the Clerk's Office for the United States District Court for the District of Puerto Rico; U.S. Attorney General Janet Reno; the United States Department of Justice; Federal Bureau of Investigation Director Louis Freeh; the Federal Bureau of Investigations; the Co–Chair of the President's Inter–Agency Group in Puerto Rico; and the White House. This motion smacks of a fishing expedition which seeks to cast a very large net. We register our disdain for such practices here.

■ Furthermore, Defendant is also seeking discovery in a criminal case against non-parties. This is not a normal or welcomed practice. See, e.g., Chevrette v. Marks, 558 F.Supp. 1133, 1135 (M.D.Pa.1983) (heavily criticizing habeas petitioner for making a multitude of frivolous motions including one requesting discovery from non-parties). Discovery in criminal cases is much more circum-scribed than in civil cases where litigants are granted a wider berth. As such, it is particularly disconcerting that Defendant is seeking such a voluminous production of materials from non-parties. To exacerbate the situation, as we have previously noted, Defendant's motion is literally teeming with unsubstantiated and unsupportable invectives. The breadth of Defendant's motion would be more than questionable in a civil case. To present such a motion for discovery against non-parties in a criminal case is decidedly noisome.

■ In addition, Federal Rule of Criminal Procedure 16 sets the permissible bounds of discovery in criminal cases. Fed.R.Crim.P. 16. Rule 16(a)(1)(C) proscribes the documents and tangible objects which may be discovered. Therefore, the government, and much less non-parties, has no duty to disclose any materials not enumerated in the rule absent a showing of materiality by the defendant. See United States v. Jordan, 399 F.2d 610 (2d Cir.1968). Materiality means that the defendant must demonstrate that the material would "enable the accused to substantially alter the quantum of proof in his favor." United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir.1976); United States v. Buckley, 586 F.2d 498, 506 (5th Cir.1978). Additionally, such requests must be reasonable, and disclosure under Rule 16 only applies to items "within the possession, custody or control of the government." Fed.R.Crim.P. 16(a)(1)(C). Thus, disclosure has been disallowed in cases where the evidence was under the control of foreign police authorities and other persons not subject to control of the prosecuting attorney. See, e.g., United States v. Flores, 540 F.2d 432 (9th Cir. 1976); United States v. Cotroni, 527 F.2d 708 (2d Cir.1975). But see United States v. Scruggs, 583 F.2d 238 (5th Cir.1978) (allowing discovery of materials under custody of a different federal agency).

■ In this case, Defendant's expansive motion seeks discovery from many

different federal agencies and parties, including the district court and presumably federal judges, without demonstrating even the slightest support for the materiality of such information. There is no credible assertion of inability to pursue the claim without the requested information. Given this context, we deny Defendant's motion.

### Conclusion

In accordance with the foregoing, we **DENY** Defendant's motion for recusal pursuant to 28 U.S.C. § 455; **DENY** Defendant's motion to dismiss his indictment; and **DENY** Defendant's motion to compel discovery. This Opinion and Order disposes of *Docket Document No. 54.*

**IT IS SO ORDERED.**